UNITED STATES

v.

**Sergeant Charles M. MORENO, FR 467–88–8543, United States Air Force.**

**ACM 25190.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Sept. 1985.

Decided 28 Oct. 1986.

Appellate Counsel for the Appellant: Mr. John M. Economidy, San Antonio, Texas. Colonel Leo L. Sergi and Captain Deborah A. Baker.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major David F. Barton.

Before FORAY, MICHALSKI and MURDOCK, Appellate Military Judges.

## DECISION

MURDOCK, Judge:

The facts of this case are straightforward. By mistake, the base credit union credited the appellant's account with a deposit of $10,033 which was intended for deposit in another credit union member's account. Shortly after the mistaken deposit, the appellant went to a credit union automated teller machine and found that his balance was $10,033 larger than it had been just a few days earlier. He made a $20 withdrawal and checked the balance again. It still showed a $10,033 surplus beyond the balance he expected. That same day he wrote a $2,000 check on his credit union account payable to his ex-wife. Four days later he wrote an $8,000 check, again to his ex-wife. Later in the month the actual depositor noticed the $10,033 had not been posted to his credit. He went to the credit union to inquire and the mistake was discovered.

When the mistake was discovered, and the appellant's identity became known, credit union officers called him in and asked whether he had made a $10,000 deposit to his account. The appellant was evasive, denied knowing about a $10,000 deposit, and suggested that possibly his wife had made the deposit. When their efforts to have the appellant return the money proved unsuccessful, the credit union impounded the remaining funds in his account and had the funds in the appellant's ex-wife's account frozen through a state proceeding. The Air Force Office of Special Investigation (OSI) was notified and two searches for bank records resulted. The first was authorized by the air base group commander, and the second was authorized by a United States magistrate.

The appellant asserts twelve errors. We find no merit in any of them, but do find that the sentence adjudged was beyond the permissible maximum punishment. Although we have found that the government did not commit prejudicial error, there are aspects of this case which warrant discussion.

## I

### The First Search

The credit union building where the records were kept was located on Lackland Air Force Base, Texas. The OSI initiated two searches for the appellant's financial records at that credit union. The first search was authorized by the air base group commander and the second was authorized by a civilian United States magistrate. The first five assertions of error relate to the first search.

Authorization for search of property located on a military installation is normally vested in a commander or other appropriate person who has control over the place where the property or person to be searched is situated or found or in a military judge or magistrate. Mil.R.Evid.

315(d). This includes buildings occupied by credit unions, commercial banks, or other nonmilitary activities. The appellant asserts that the installation commander is not the proper official to authorize searches of the internal financial records of such a nonmilitary financial institution because the Right to Financial Privacy Act of 1978 (TRFPA), 12 U.S.C. 3406 limits that authority to those authorized by the Federal Rules of Criminal Procedure (Fed.R. Crim.P.) to issue search warrants. Rule 41, Fed.R.Crim.P., states that search warrants may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located.

■ The government concedes that the installation commander was not a magistrate or other person authorized to issue search warrants under the Fed.R.Crim.P.. We agree. Interestingly, Air Force Office of Special Investigation Regulation 124–49 directs OSI agents to seek a federal search warrant when they are attempting to obtain financial records from stateside financial institutions. It states: Search authorizations signed by military commanders or military judges will not be used in the U.S. or its territories to gain access to financial records. AFOSI Regulation 124–49, *Obtaining Financial Data Information*, 23 Feb 84, para 3–9a.

The procedures used in the first search obviously did not comply with AFOSI Regulation 124–49. What is important to our consideration is whether the circumstances of the first search, while admittedly not following an applicable Air Force directive, were so erroneous as to require some correction on our part. The appellant asserts that TRFPA requires exclusion of information gathered in violation of its provisions. We hold that it does not.

Section 3417(d) states that "the remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violation of this chapter". Section 3417 of TRFPA lists the civil penalties which may be applied to "(a)ny agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter." The penalties are essentially: $100, any actual damages, court approved punitive damages if the disclosure is willful for intentional, and costs. These penalties are payable to a customer to whom the disclosed records relate. Section 3418 of TRFPA authorizes injunctive relief to require compliance with the act. Congress could have included an exclusionary rule in the list of sanctions authorized by the act. Since they chose not to, exclusion is only required if the information requires exclusion for some reason other than violation of TRFPA.

■ The scope of the search was reasonable. The air base group commander had law enforcement responsibilities over the on-base credit union. *Cafeteria and Restaurant Workers Union, Local 473 AFL–CIO v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1960) rehearing denied, 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 (1961); *United States v. Banks*, 539 F.2d 14 (9th Cir.1976). In fact, the lease to the credit union authorized base law enforcement personnel to enter the credit union at any time for inspection and inventory and when necessary for protection of the interests of the government. Although the first search did violate the AFOSI regulation on conducting searches of financial institutions, there is nothing to indicate that the agent who obtained the search authorization and conducted the search did so in order to circumvent the provisions of the relatively obscure federal provisions on financial privacy. The agent had been in the Air Force 15 years, but had only been in OSI for 18 months. He had not been trained in conducting searches for financial records held in on-base banks or credit unions. The procedure he followed in contacting the base commander was the appropriate action to take in nearly all requests for search authorization other than this type. His technical violation of the written administrative procedures for obtaining search authority does not require suppres-

sion, particularly since any possible defects which might have existed in the first search were avoided by conducting the second search.

## II.

### The Second Search

The appellant raises four errors concerning the second search. Essentially, he asserts that the second search was not based on an independent source of information, but was based on the results of the first search, and that the OSI agents willfully and deliberately omitted material information (that being that there had been another search) when they applied for the search warrant.

■ When there are two searches, and the first is declared to be illegal, the results of the second search remain admissible as long as the search authorization was based on an independent source of information. *Silverthorne Lumber Company v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). This requirement for information from an independent source usually results in different information, or at least the same information but from different sources, pointing to the same search result. In a case like this, however, where the objects of the search are so predictable because of the type of offense (that is, bank offenses result in a need to obtain bank records) the independent source requirement can be confusing. The mere fact that the same items were seized in both searches does not indicate that the search was illegal. Where the same information leads to the same items during different searches, they can be considered to have come from independent sources when the information which led to the second search was known before the second search was conducted. *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *United States v. Fitzharris*, 633 F.2d 416 (5th Cir.1980). The evil which the exclusionary rule is guarding against is the use of illegally obtained information to support a search warrant. *Wong Sun v. United States*, 371 U.S. 471,

83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This goal of basing searches on untainted information is reached just as readily when the magistrate is given only information which was known before the illegal search as it is when the magistrate is given information which is discovered later, but from a different source.

■ We find no error in the way the request for the second search was handled. The information used to inform the magistrate was not tainted by the first search, and it was completely proper for the agent not to mention the first search. What had been found in the first search, and even the fact that there had been a first search, was clearly irrelevant to the issue of whether probable cause existed to grant the second search. The OSI agent's failure to mention the first search to the magistrate was a proper effort to avoid tainting the second search. It was not a willful and deliberate omission of material information because the facts concerning the first search were not germane to the existence of probable cause for the second search. The evidence gathered during the second search was admissible.

## III.

### Unjust Enrichment

■ The appellant next asserts that his actions did not constitute a criminal offense, but constituted only an unjust enrichment for which only administrative remedies should be imposed. We disagree. The appellant cites several state court cases to support his contention. In our opinion, these cases do not stand for the propositions asserted by the appellant. Even if they did support his arguments, state cases are not binding on us. The principal holding of these cases is that where a teller's mistake results in a payee receiving too much money, failure of the payee to return the money is unjust enrichment. The cases cited by the appellant establish that the money should be returned, but they do not hold that return of the money is the only remedy available

when there is evidence of other criminal involvement; neither does the Uniform Code of Military Justice.

 The facts of this case do raise evidence of criminal involvement—larceny. An essential element of larceny is that there must have been a taking, obtaining, or withholding of someone else's property. As a general rule any movement or exercise of dominion over the property is sufficient to constitute a larcenous taking, obtaining or withholding if it is accompanied by the requisite intent to permanently deprive or defraud another of the use and benefit of the property or permanently to appropriate the property to the thief's own use. MCM, Part IV, para 46c(1)(b). An intent to steal can be shown even when the initial possession was innocent. Circumstantial evidence may be used to prove an intent to steal. If a person secretly takes property, hides it, and denies knowing anything about it, an intent to steal may be inferred. MCM, 1984, Part IV, para 46c(1)(f)(ii). The appellant's secretive movement of the $10,000, in two transactions, into his ex-wife's account in another bank and his subsequent denial of knowledge about the money are sufficient acts of dominion over the money to demonstrate an intent to steal and constitute a larcenous taking. The appellant's acts were properly charged as larcenies.

### IV.

#### The Sentence

 The appellant was sentenced to a bad conduct discharge, one month's confinement, forfeiture of $620.40 per month for one month, and reduction from sergeant to airman basic. The convening authority approved the sentence without change. When an accused is reduced as a result of a court-martial sentence, any partial forfeitures he may also receive in that sentence must be for the grade to which he is being reduced. R.C.M. 1003(b)(2); Air Force Regulation 111–1, *Military Justice Guide*, 1 Aug 84, 7–11. In this case, the maximum partial forfeiture which can be imposed is $413.00 per month. Accordingly, we approve only so much of the sentence as extends to a bad conduct discharge, one month's confinement, forfeiture of $413.00 per month for one month, and reduction to airman basic.

### V.

We have read the entire record, the allegations of error submitted by the appellant, and the government's reply thereto. We are convinced that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty, and the sentence, as modified, are

AFFIRMED.

Senior Judge FORAY and Judge MICHALSKI concur.