UNITED STATES

v.

Sergeant Cheryl A. BRANOFF, FR192–56–6779 United States Air Force.

ACM 28891.

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 May 1990.

Decided 24 Jan. 1992.

614

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain James C. Sinwell.

Before O'BRIEN, O'HAIR, PRATT and JAMES, Appellate Military Judges.

JAMES, Judge:

This case is about discovery. Appellant was convicted by a general court-martial of six specifications alleging use and introduction of drugs under Article 112a, UCMJ, 10 U.S.C. § 912a (1988). The trial was lengthy [1] and vigorously contested, despite her confession. On appeal, appellant complains that her discovery request for access to a regulation was denied and that she is disadvantaged on appeal because no copy of the regulation is included in the record; that copies of the prior statements of witnesses, given to her in response to her discovery requests, had been redacted; that this Court has impeded her appeal by denying access by her counsel to exhibits sealed and attached to the record; and that the military judge improperly foreclosed her efforts at impeaching some witnesses. She also brings our attention to the admissibility of her confession, to the sufficiency of the evidence to convict on two of the specifications in particular (those not proven by her confession), and to the appropriateness of the sentence. We address the admissibility of the confession first, and then we turn to the other assignments of error. We find one error affecting the sentence and cure it by reassessing the sentence.

## I. Admissibility of Confession

The confession issue arises from the involvement of a first sergeant in transporting appellant to the investigators who questioned her. This case is one of several that resulted from an investigation by special agents of the Air Force Office of Special Investigations (OSI) of drug abuse in one squadron at Yokota Air Base in Japan. The investigation involved many suspects who were interviewed by the agents. One day the agents asked the squadron's first sergeant to find about 20 of the suspects and transport them to the agents' office for interrogation. Appellant complains that the first sergeant "softened her up" during her ride to the OSI office. The military judge's findings of fact summarize the events:

Eleven.... During the drive [the first sergeant] did not speak to the accused until he reached the stop sign on Bobzien near the military terminal.[2] At the stop sign he informed the accused that he was taking her to OSI where she would be asked questions and that honesty was the best policy.

Twelve, during the trip to the OSI [the first sergeant] did not read Sergeant Branoff her Article 31 rights, nor did he question her.

Thirteen, at 1119 hours an interview of the accused began.... Initially [the OSI agent] asked the accused if she knew why she was there. The accused said she did not know. [The OSI agent] told the accused that this was her interview and she could stop it at any time.

.... Fourteen [the OSI agent] then advised the accused of her Article 31 UCMJ rights as well as her right to counsel. At approximately 1121 hours she acknowledged understanding of these rights. When asked whether she wanted counsel, Sergeant Branoff said she did not know. [The OSI agent] reiterated her rights and said the decision was hers. At about 1124 hours she waived her right to counsel. And at about 1126 agreed to speak.

However, her confession did not flow immediately. Instead, appellant questioned the interrogators at some length. The military judge's findings of fact continue:

Eighteen, between 1126 and 1155 hours the accused did not make any incriminating statements. During this period she was advised that any cooperation would be passed on to her commander. And it

---

1. So was the staff judge advocate's pretrial advice under Article 34, UCMJ, 10 U.S.C. § 834 (1988). *See* R.C.M. 406(b) and accompanying discussion; *United States v. Smith,* 33 M.J. 968 (A.F.C.M.R.1991).

2. Elsewhere in the record it is established that the stop sign was very near the OSI's building.

was after this discussion of cooperation that a first break was taken.

\* \* \* \* \* \*

Twenty, during the break [the OSI agent] told the accused that he thought she did not trust OSI and asked her if she wanted to talk to the first sergeant.... At about 1207, the accused requested to see [him].

Twenty-one, from approximately 1217 hours until about 1232 hours the accused talked with [the first sergeant] alone....

Twenty-two, the accused asked [the first sergeant], "What's happening,"....

Twenty-three, [the first sergeant] informed the accused that there had been a drug bust in the [accused's squadron] and that various people had confessed. He added that ... these people admitted to the use of drugs with her..... He also informed Sergeant Branoff that this was her chance to tell her side of the story if she chose to do so.

Twenty-four, at one point the accused asked [the first sergeant] if she needed a lawyer. [The first sergeant] reminded her that this was up to her. During their talk when the accused asked [the first sergeant] what she should do, he told her that this was her decision.

Appellant then resumed the interview with the OSI agents and gave a confession. Appellant objected to the confession at trial, and the matter was litigated at considerable length. There is ample evidence to support the military judge's findings of fact, and we find no reason to disturb them. *See United States v. Middleton*, 10 M.J. 123, 133 (C.M.A.1981); *United States v. Cummings*, 21 M.J. 987, 989 (N.M.C.M.R.1986), *pet. denied*, 22 M.J. 242 (C.M.A.1986). *But cf. United States v. Cole*, 31 M.J. 270 (C.M.A.1990).

The issue is voluntariness.[3] Appellant's view is that the first sergeant's speech while driving to the interview was an unwarned interrogation that results in a presumptive taint of the ensuing interrogation by the OSI. She relies on *United States v. Byers*, 26 M.J. 132 (C.M.A.1988). She fur-

ther asserts that the first sergeant's "honesty is the best policy" speech was a "motivational seed to entice cooperation," relying on our decision in *United States v. Steward*, 29 M.J. 724 (A.F.C.M.R.1989), *reversed*, 31 M.J. 259 (C.M.A.1990). Citing *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), she sees that and related events as "subtle pressure" designed to nullify the benefit of Article 31, 10 U.S.C. § 831.

■ After this case was tried, the "presumptive taint" idea in *Byers* lost any appellate following that it might have had. *Steward*, 31 M.J. at 264–65. Instead, appellate courts will assess voluntariness in the light of all the circumstances. *United States v. Phillips*, 32 M.J. 76 (C.M.A.1991).

■ If appellant is to succeed at all, she must show her case to be like the *Byers* facts, and so she emphasizes that her statements were unlawfully induced by the first sergeant's "honesty" speech and by the OSI agent's remarks that cooperation would be reported to appellant's commander. However, it is now well established that an agent's statement that he would report cooperation does not make the confession involuntary. *Steward*, 31 M.J. at 265–66.

The first sergeant's brief speech is much dissimilar from the prolonged, 20 to 40–minute "pitch" in *Byers*, particularly in that it does not seem to have been designed to elicit a response. The *Byers* situation is also greatly distinguishable because the appellant here intelligently and diligently considered how to exercise her rights by *questioning the interrogators* at length before she said anything incriminating. Appellant's deliberate behavior is hardly evidence of the "feeling of helplessness" discussed in *Byers*.

There was no prior illegality to taint the interrogation by OSI or to induce her to confess to the agents because the first sergeant never questioned her. This record clearly shows that any lingering effect of the first sergeant's brief "honesty" speech was submerged deep in the events that followed next. We conclude

---

3. The issues were well briefed at trial.

that appellant's confession was preceded by proper warnings and was entirely voluntary. There was no reason to exclude it, and it was properly admitted.

## II. Discovery

The issues relating to discovery have become unduly complicated in this case. Appellant complains that the military judge erred by denying the defense's specific request for discovery of Air Force Office of Special Investigations Regulation 124–9. Appellant argues both her right to due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and her right to discovery under R.C.M. 701. Before we can address her arguments, we must address appurtenant assignments of error relating to the completeness of the record of trial. Appellant also complains that some of the statements of witnesses that she received during discovery were redacted. Finally, appellant complains that she has been denied access to exhibits that were considered by the military judge, sealed, and attached to the record.

### A. Completeness of the Record.

■ The regulation was much discussed by both counsel and witnesses who, during examination by both parties, were asked to describe it. But it was never produced at trial.[4] Accordingly, the regulation itself was never a part of the proceedings and is

therefore not a part of the record of those proceedings. R.C.M. 1103(b)(2). This situation contrasts with that in *United States v. Kyle*, 32 M.J. 724 (A.F.C.M.R.1991), in which the military judge examined the disputed documents and denied the discovery motion because he found the documents irrelevant but did not append them to the record as R.C.M. 701(g)(2) is often taken to require.[5] This record is adequate for our purposes. We hold that a record need not include every matter sought in discovery, but only those examined by the military judge. *United States v. Franchia*, 13 U.S.C.M.A. 315, 32 C.M.R. 315, 319 (1962). The absence of the regulation is not error.

### B. AFOSI Regulation 124–9.

The discovery issues are also complicated because the parties have briefed them in both the language of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the language of discovery under R.C.M. 701. Here, as we found in another setting in *United States v. Langston*, 32 M.J. 894 (A.F.C.M.R.1991), it is helpful to segregate the ideas before addressing the errors assigned.

An accused who seeks discovery over the prosecution's opposition needs some authority for the request. Despite the lengthy military tradition of generous disclosure,[6] there is no unqualified right to

---

4. Appellate defense counsel's impression to the contrary is understandable but mistaken.

5. Careful readers will note that R.C.M. 701(g)(2) does not require that the suppressed document itself be examined and then sealed and attached to the record. Instead, the rule permits ex parte consideration of a *statement* of the opposing party. That provision is based upon Fed. R.Crim.P. 16(d)(1). Manual For Courts–Martial, United States, 1984, App. 21 at A21–30. If a secondary statement about the disputed document is adequate in the view of the rule-makers, then it is necessarily implied that it is unnecessary to examine and attach the disputed document itself.

6. *See, e.g., United States v. Eshalomi*, 23 M.J. 12, 24 (C.M.A.1986); *United States v. Killibrew*, 9 M.J. 154, 159 (C.M.A.1980); *United States v. Cumberledge*, 6 M.J. 203, 204 n. 4 (C.M.A.1979). Perhaps the tradition should be reviewed in passing. It arises, we suspect, mainly from two special statutory provisions that benefit a mili-

tary accused significantly and in ways not available to his civilian counterpart in the federal system, Articles 32 and 46, UCMJ, 10 U.S.C. §§ 832 and 846 (1988). *See generally* Manual For Courts–Martial, United States, 1984, analysis accompanying R.C.M. 701 at App. 21, p. A21–29, –30 ("Introduction"). *Cf. United States v. Napue*, 834 F.2d 1311, 1316–17 (7th Cir.1987).

The investigation under Article 32 is the functional equivalent of a grand jury under Fed. R.Crim.P. 6, but the Article 32 investigation is different in that the accused and his counsel may attend, examine witnesses and evidence, and have the help of the investigator in producing witnesses and evidence. Furthermore, it results in a written report with evidence appended, a copy of which is provided to the accused. *Compare* R.C.M. 405(f) (Rights of the accused), (j) (Report of investigation) *with* Fed. R.Crim.P. 6(d) (Who May Be Present), (e) (Recording and Disclosure of Proceedings). Thus, the Article 32 investigation is in part a discovery opportunity. *See United States v. Franchia*, 13

have everything for which one may ask. *See generally Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case...."); *Wardius v. Oregon,* 412 U.S. 470, 474–75, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1972); *United States v. Napue,* 834 F.2d 1311, 1316–17 (7th Cir.1987). Discovery is generally regulated by R.C.M. 701, and the defense rights to discovery are listed at R.C.M. 701(a)(1)–(6). *Cf. United States v. Reece,* 25 M.J. 93 (C.M.A.1987). R.C.M. 701(a)(6) also incorporated the *Brady* disclosure requirements.[7] Manual For Courts–Martial, United States, 1984, App. 21 at pp. A21–29 et seq., analysis accompanying R.C.M. 701(a)(6). The rule is also patterned closely after Fed.R.Crim.P. 16,[8] though it is much more generous in that it adds the *Brady* idea as a discovery right. *Id.* Thus, R.C.M. 701 must be considered at times against the backdrop of law developed under *Brady,* and at times against that developed under Fed.R.Crim.P. 16, at

other times alone, where it is entirely original, and at other times against its origins in military criminal law. With these introductory ideas in mind, we turn to the specifics of the two requests that were denied.

Appellant sought discovery of a regulation issued by Headquarters Air Force Office of Special Investigations, AFOSI Regulation 124–9. The request was denied. Among the defense rights to discovery at R.C.M. 701(a), only two are applicable here, R.C.M. 701(a)(2) ("Any ... documents ... within the control of military authorities....") and (6) (the *Brady* subsection). We address the *Brady*–R.C.M. 701(a)(6) possibility first.[9]

1. *Brady* & R.C.M. 701(a)(6)

■ Exculpatory information must be disclosed. *Brady,* 373 U.S. 83, 83 S.Ct. 1194. *See also United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)

U.S.C.M.A. 315, 32 C.M.R. 315, 320 (1962). A civilian gets none of those benefits from a grand jury.

Article 46 guarantees the accused "equal access" to the evidence. It is a generous guarantee, the benefits of which are available in so many varieties of situations that we have no hope of cataloging all here. *See, e.g., United States v. Enloe,* 15 U.S.C.M.A. 256, 35 C.M.R. 228 (1965) (unchaperoned interviews of investigators). It is our impression that civilian criminal discovery rights are far less generous.

The military tradition of free discovery has arisen from these two sources. We do not intend to thwart it, for early, free, full disclosure and generous discovery are universally agreed to be conducive to economy and accuracy. However, we do pause to note that it is no authority for a position simply to urge that there is such a tradition. There will inevitably be occasions on which a party intends to limit disclosure or access to that required by the law. The Rules for Courts–Martial and the appellate precedent govern such situations, not traditions, as commendable as the latter might be.

7. Were *Brady* not incorporated in R.C.M. 701, we would not discuss it in rubric of discovery: "It is clear as a matter of law that the holding of the Supreme Court in *Brady* ... was not meant to embrace, as a matter of constitutional due process, a tool of general discovery for the defendant in criminal cases." *United States v. Horsey,* 6 M.J. 112, 115 (C.M.A.1979). It is instead about a right to fair treatment and a

sound, truth-seeking trial. While the language might be slightly different, however, the discussion would have been equally necessary and much the same.

8. *See* Article 36(a), UCMJ, 10 U.S.C. § 836(a) (1988); *see generally* 2 C. Wright, *Federal Practice and Procedure* §§ 251 (history of discovery in federal civilian criminal rules), 252 (policy considerations), 254 (discovery under Fed. R.Crim.P. 16(a)(1)(C), addressed in detail below), 258 (regulation of discovery), 261 (appellate review of discovery issues) (1982) (hereinafter 2 Wright § ——); 2 L. Orfield, *Criminal Procedure under the Federal Rules* §§ 16:2 through 16:9 (history, policy), 16:10 (discovery under Fed.R.Crim.P. 16 generally), 16:21 (discovery under Fed.R.Crim.P. 16(a)(1)(C), addressed in detail below), 16:25 (government agency records), 16:39 (privileged information), 16:40 (discretion), 16:48 (on appeal) (hereinafter 2 Orfield § ——); annotation, *Discovery and Inspection of Prosecution Evidence Under Federal Rule 16 of Criminal Procedure,* 5 A.L.R.3d 819 (1966 and supp. 1991) (hereinafter Annotation I).

9. We do not address the possibility that the regulation enjoyed a privilege under Mil.R.Evid. 506: trial counsel explicitly abandoned that ground for opposing disclosure of the regulation. *See generally United States v. Flannigan,* 28 M.J. 988 (A.F.C.M.R.1989), *rev'd on other grounds,* 31 M.J. 240 (C.M.A.1990).

(three tests, depending on the circumstances); *Eshalomi,* 23 M.J. at 21–22. Impeachment and rebuttal information can be included in the kinds of information that the prosecution must disclose. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Watson,* 31 M.J. 49 (C.M.A.1990); *United States v. Murphy,* 33 M.J. 323 (C.M.A. 1991); *United States v. Trimper,* 28 M.J. 460 (C.M.A.1989), *cert. denied,* 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989).

▇▇▇ Suppression of exculpatory evidence may deny due process. *Brady,* 373 U.S. 83, 83 S.Ct. 1194. The appropriate remedy is to set aside the conviction, but that remedy is appropriate only if the evidence is material, *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381. The appellate remedy depends upon a sliding scale of materiality, which depends, in turn, on whether there was a request for the information sought and how specific that request was. In this case there was a request, and it was specific. Accordingly, "... the test is whether this 'evidence might have affected the outcome of the trial.'" *United States v. Hart,* 29 M.J. 407, 409 (C.M.A.1990) (quoting *Agurs,* 427 U.S. at 104, 96 S.Ct. at 2398). When there has been a specific request for the information, as here, evidence is presumed to be material unless the denial is shown to have been harmless beyond a reasonable doubt, *Hart,* 29 M.J. at 410.

▇▇▇ As we noted earlier, the regulation is not in the record. For the purposes of our *Brady* analysis, we will simply assume that the regulation might have had some generally exculpatory value.[10] That assumption leads to the conclusion that it was error to deny discovery of the regulation. When we examine the error to determine whether it denied due process and requires reversal, we find the situation very similar to that in *United States v. Horsey,* 6 M.J. 112 (C.M.A.1979). We conclude, as did that court, that "[t]he mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the case does not establish materiality in the constitutional sense." *Id.* at 115. Instead, "the information must be highly probative of the innocence of the accused." *Id.*

▇▇▇ Fortunately, though we do not have the regulation to examine, the record shows adequately that the defense could have done no more with it than to conduct a sideshow trial of the OSI agents to determine whether they had followed their agency's official guidelines, assuming that the military judge permitted such an excursion. *Cf.* Mil.R.Evid. 403. While that might have detracted from their credibility on other matters in some small way, it would not have affected the result in this case. In no way could denial of its disclosure have approximated the kind of devastating effect on the truth-seeking function that would have constituted a denial of due process and required reversal.[11] We find the sup-

10. Some will wonder why we do not simply take judicial notice of the regulation, as the Court of Military Appeals did in *United States v. Samora,* 6 M.J. 360, 363 (C.M.A.1979) (Cook, J., concurring) (also an OSI regulation case).

The problem is that the agency seeks to protect the regulation from widespread disclosure (though not asserting a privilege under Mil. R.Evid. 505–506) and has denied appellant access to it. Were we to examine it, we would assuredly be seeking facts with which to decide the issue. Regardless whether we regard the regulation as a matter of adjudicative fact or as a matter of law, the parties are entitled to an opportunity to be heard before a factfinder takes judicial notice under Mil.R.Evid. 201 and 201A. Even though those rules are inapplicable to our examination of the case, Mil.R.Evid. 1101(d), the principle remains valuable. An appellate court should not fill holes in a record by

taking judicial notice *in camera* unless the facts or law noticed are indisputable. Appellant could hardly be said to have enjoyed the right to participate if she could not examine the disputed document of which notice might be taken, but delivering it to her for inspection would frustrate the government's right to insist on proper limitations on discovery and disclosure.

Furthermore, our resolutions of both aspects of this issue are in part based on the failure of appellant to carry her burden of producing evidence on the issue at trial. That approach makes it unnecessary for us to examine the regulation.

11. The military judge examined the issue to determine whether the regulation was relevant. As our analysis shows, that is not the right inquiry. *But cf. United States v. Franchia,* 13 U.S.C.M.A. 315, 32 C.M.R. 315, 320 (1962).

pression of the regulation to have been harmless beyond a reasonable doubt, *Hart,* 29 M.J. 407, even assuming that it was exculpatory. However, before we can leave this issue, we must address non-*Brady* discovery under R.C.M. 701(a)(2) because it is an alternative authority for the discovery sought.

2. R.C.M. 701(a)(2).

R.C.M. 701(a)(2) is among those parts of the rule that have a heritage in the civilian rules, in this instance Fed.R.Crim.P. 16(a)(1)(C). Manual For Courts–Martial, United States, 1984, App. 21 at pp. A21–30, analysis accompanying R.C.M. 701(a)(2).[12] Therefore, we first turn briefly to orient ourselves to the civilian view of the civilian rule, because we will apply it in deciding whether R.C.M. 701(a)(2) required the discovery sought here.

■ Fed.R.Crim.P. 16 is regarded as an "innovation, broader in scope than was the law prior to its adoption, and which at least codified the most liberal discovery rules that existed prior to the promulgation of the rules," but it still "provides only for limited or restricted discovery and inspection and does not authorize the opening up of government files by all persons charged with crime." 2 Orfield, *supra* n. at § 16:10 at pp. 599–600. We note as one of our starting points that discovery is not a constitutional right, *id.* at § 16:14, and "did not lie at common law," *id.* at § 16:15 at p. 612. Instead, it is a procedural matter within the discretion of the rulemaker to regulate. Thus, the rule governs as the

explicit definition of rights by one authorized to do so: There is no right to discovery over objection broader than that required by the rule.

To say that R.C.M. 701 is also an innovation is a gross understatement for, as liberal as discovery has been by military tradition, the boundaries of the tradition have never been so explicitly stated before. But its deliberate reliance in this pertinent part on the civilian rules and their appellate history cannot be mistaken and implies to us that it must also be interpreted as explicitly providing the limits of discovery. Therefore, we rely heavily on the civilian decisions now as we address, we believe for the first time in this jurisdiction, the limits of discovery under R.C.M. 701(a)(2).

■ Both the federal civilian and the military rules make discovery contingent upon three conditions, only one of which is pertinent in this case, "material to the preparation of the defense."[13] Thus, the issue is whether AFOSIR 124–9 would have been material to the preparation of the defense, and we will address it by examining and adopting the civilian precedent under Fed.R.Crim.P. 16(a)(1)(C).

To obtain discovery under [Federal] Rule 16(a)(1)(C), a defendant must make a prima facie showing of materiality. A general description of the materials sought or a conclusory argument as to their materiality is insufficient....

*United States v. Cadet,* 727 F.2d 1453, 1468 (9th Cir.1984) (citations omitted).[14] *Facts* are required, *id.* at 1466, and we

---

However, his inquiry made a record that permits us to do ours.

**12.** This passage also has roots in paragraph 115c of Manual For Courts–Martial 1969 (rev. ed.), but the kinship of the language pertinent in this case is much more directly related to the counterpart in Fed.R.Crim.P. 16(a)(1)(C).

**13.** The other two criteria, which are alternatives, are that the evidence sought will be used as evidence by the prosecution or that it belonged to the accused and was seized from him. *See generally* 2 Wright, *supra* n. 8, at § 254. Many appellate decisions also discuss the reasonableness of the request. Fed.R.Crim.P. 16(a)(1)(C) formerly included reasonableness as one criteria, but the rule was changed in 1975 to delete that aspect. 2 Wright § 254. Finally,

note that Wright reports some authority for the proposition that "documents" in Fed.R.Crim.P. 16(a)(1)(C) (and therefore also in R.C.M. 701(a)(2)(A)) means those which may be "evidentially used." *Id.,* quoting from *United States v. Pascual,* 606 F.2d 561, 565 (5th Cir.1979). We do not explore that avenue today because it is evident that, had discovery been granted, the regulation might have become a collateral exhibit during the intended impeachment of the OSI agents.

**14.** *See also, United States v. Maniktala,* 934 F.2d 25 (2d Cir.1991); *United States v. Whiteside,* 810 F.2d 1306, 1308 (5th Cir.1987); *United States v. Little,* 753 F.2d 1420 (9th Cir.1984); *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir. 1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792,

emphasize that the burden of going forward with evidence is on the defense.[15] *Id.; see also United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990).

 "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Ross,* 511 F.2d 757, 763 (5th Cir.1975), *cert. denied,* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).[16] It requires "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id.* at 763.[17] We also emphasize that we will examine the military judge's decision only for abuse of discretion. *See, e.g., Cadet,* 727 F.2d at 1468.[18]

 The issue was thoroughly considered at trial. Yet, despite the extensive opportunity to do so, appellant never established by any facts that the regulation "would have enabled the defendant significantly to alter the quantum of proof in his favor." As we remarked above, it would at most have contributed to a barely interesting sideshow about how well the investigators followed their agency's "management tool" for doing that chore. Any deficiency in that activity would only have been help-

ful to a performance assessment. There is also no suggestion anywhere in the record that the regulation establishes the kind of protections of individual rights or liberties that are judicially enforceable. *Cf. United States v. Samora,* 6 M.J. 360, 363 (C.M.A. 1979) (Cook, J., concurring); *United States v. Russo,* 1 M.J. 134 (C.M.A.1975); *United States v. Moreno,* 23 M.J. 622 (A.F.C.M.R. 1986), *pet. denied,* 24 M.J. 348 (C.M.A. 1987).

Even if we were to assume that we are mistaken, that the regulation sought should have been disclosed, we must still test the "error" for prejudice. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988); *Ross,* 511 F.2d at 764; 2 Wright, *supra* n. 8, at § 261. As we noted, the regulation could at most have been used to detract from the reliability of the investigators. This case did not hinge on their credibility. It hinges on the credibility of the appellant's confession and of her associates. Thus, even if we assume that it was error to deny discovery of the regulation, we find it to have been harmless error not warranting relief.

## C. The Redacted Statements

The prior statements of the prosecution witnesses were disclosed to the appellant,

60 L.Ed.2d 242 (1979); *see generally* Annotation I, *supra* n. 8, at § 9(a).

**15.** This raises the question of Chief Justice Marshall:

Now, if a paper be in possession of the opposite party, what statement of its contents ... can be expected from the person who claims its production, he not precisely knowing its contents?

*United States v. Burr,* 25 Fed.Cas. 187, 191 (C.C.D.Va.1807), as quoted at 2 Wright, *supra* n. 8, at § 254, pp. 67. Wright informs us, "There has been no satisfactory answer...." Fortunately, we do not have that problem in this case, in which witnesses acquainted with the regulation were questioned on the record by the defense about the regulation. None refused to answer. We charge any deficiency in the description of the regulation to the defense.

**16.** *See also United States v. Reeves,* 892 F.2d 1223 (5th Cir.1990); *United States v. Conder,* 423 F.2d 904, 910 (6th Cir.1970), *cert. denied,* 400 U.S. 958, 91 S.Ct. 357, 27 L.Ed.2d 267 (1970).

**17.** It appears that the civilian consensus limits materiality to that which contributes directly to

a *defense,* thus excluding collateral aspects from "material." *See, e.g., Mandel,* 914 F.2d 1215 at 1219; *United States v. Clegg,* 740 F.2d 16, 18 (9th Cir.1984). Though we otherwise adopt the civilian approach to discovery under R.C.M. 701(a)(2)(A), we do not yet adopt that aspect. Instead, in this case, we consider whether the information sought was shown by the defense to have such significant value for cross-examination that it would have produced the significant change in the persuasiveness of the defense's case that "materiality" otherwise implies.

**18.** *See also, Mandel,* 914 F.2d 1215; *Reeves,* 892 F.2d 1223; *United States v. Iglesias,* 881 F.2d 1519 (9th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990); *Little,* 753 F.2d 1420, 1444; *Clegg,* 740 F.2d 16; *United States v. Roth,* 736 F.2d 1222 (8th Cir.1984); *United States v. Balk,* 706 F.2d 1056 (9th Cir. 1983); *United States v. Lee,* 589 F.2d 980 (9th Cir.1979), *cert. denied,* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979); *United States v. Evans,* 542 F.2d 805 (10th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977); *Ross,* 511 F.2d 757; Annotation I, *supra,* note 14, at § 3(a); 2 Wright, *supra* n. 8, at § 261; 2 Orfield, *supra* n. 8, at § 16:40.

but they were redacted. Appellant now complains that the redaction denied her effective discovery and due process.

Appellee argues that any complaint was waived because it was not asserted at trial. We agree. Though the record is lengthy and convoluted, it appears that the defense was satisfied with the statements that it got.

Even if any objection to the redactions had not been waived, we would take the redactions as a denial of discovery. We noted above that a trial judge's denials of discovery under Fed.R.Crim.P. 16(a)(1)(C) are examined only for abuse of discretion, and now we note that the standard applies to discovery decisions *generally*. *See, e.g., United States v. Pelton,* 578 F.2d 701, 707 (8th Cir.1978); Annotation I, *supra* note 8; 2 Wright, *supra* n. 8, at § 261; 2 Orfield, *supra* n. 8, at § 16:40. We can hardly find an abuse of discretion where there is no clearly stated complaint. Instead, we find any objection to have been waived. R.C.M. 905(b)(4), (e).

### III. Access of Appellate Counsel to Sealed Exhibits

Appellant asked at trial to discover various personnel records of the investigators. The military judge examined the records *in camera* and granted the discovery request.[19] Trial defense counsel examined them, but none of them ever became public exhibits. However, the military judge ordered that the records he examined would be sealed and appended to the record of trial. Appellate defense counsel asked access to those sealed exhibits during their preparation of this appeal. We denied the motion because the discovery sought had been granted: There was no issue left to review. *See* R.C.M. 701(g)(2). Appellant assigned our denial as error.

Sealing exhibits is a traditional measure used to assure that a party's right to appeal is not frustrated. It is required as the result of *in camera* inspections and ex parte viewings or hearings. When one party opposes disclosure, fairness requires a method to resolve the dispute that does not necessarily result in the same disclosure that is opposed. Accordingly, judges often examine or hear the information sought *in camera* and out of the presence of parties other than the party who opposes disclosure.[20] This permits the judge to assess whether the information has the materiality that the movant claims. If it does not, discovery will be denied, and the information will be protected from the disclosure that the custodian opposed. However, the movant is still entitled to appeal the denial. Such a right would be meaningless if the appellate courts could not examine the information itself, and hence the need for sealing. *See, e.g., Morgan v. U.S. Department of Justice,* 923 F.2d 195, 197 n. 2 (D.C.Cir.1991); *United States v. Sarkissian,* 841 F.2d 959, 961–62, 965–66 (9th Cir.1988); *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir.1978); *United States v. Pelton,* 578 F.2d 701, 706–7 (8th Cir. 1978). Military practice includes sealing by recent tradition, *United States v. Waggoner,* 22 M.J. 692, 696 (A.F.C.M.R.1986), *pet. denied,* 24 M.J. 204 (C.M.A.1987); *but cf. United States v. Franchia,* 13 U.S.C.M.A. 315, 32 C.M.R. 315, 319 (1962), and refers to it in providing for review of discovery decisions at R.C.M. 701(g)(2), adopting the same procedure stated in Fed.R.Crim.P. 16(d)(1).

▬ The first lesson from the foregoing review is that sealing is most appropriate when discovery has been denied. However, a trial judge may specify the terms of the seal, and the tool can be used for other purposes, in conjunction with oth-

---

**19.** It has been held to be an abuse of discretion to grant such a request without first examining the records. *United States v. Cadet,* 727 F.2d 1453, 1467–68 (9th Cir.1984). *See also United States v. Buckley,* 586 F.2d 498 (5th Cir.1978); annotation, *Accused's Right to Discovery or Inspection of Records of Prior Complaints Against, or Similar Personnel Records of, Peace Officer Involved in the Case,* 86 A.L.R.3d 1170 (1978);

*cf. United States v. Reece,* 25 M.J. 93, 95 (C.M.A. 1987).

**20.** *In camera* inspection may be with the parties present or with one or both parties excluded. *E.g., United States v. Reece,* 25 M.J. 93, 95 (C.M.A.1987).

er tools.[21] *See* R.C.M. 701(g)(2) ("such other order as is appropriate"); Fed.R.Crim.P. 16(d)(1) ("such other order as is appropriate"); *Morgan,* 923 F.2d 195; *United States v. Roberts,* 793 F.2d 580, 587 (4th Cir.1986). Thus, a trial judge might grant discovery after *in camera* inspection and still order the movant to protect the information from disclosure to others.[22] If the movant objected to that restriction, it would be appropriate to seal the information in the record so that the anti-proliferation order could be appealed. We have encouraged military judges to "make a record of every significant *in camera* activity (other than ... legal research) adequate to assure that [their] decisions remain reviewable on appeal." *United States v. Kyle,* 32 M.J. 724 (A.F.C.M.R. 1991). We do not now wish to complicate that preference with qualifications.[23] It is not dispositive in this case that discovery was granted.

■ The second lesson from our review of sealing is that the entire, exclusive purpose of including sealed exhibits in the records of such cases is to preserve the record for appeal. Indeed, we emphasized the "purpose limitation" at R.C.M. 701(g)(2): "Such material may be examined ... for the purpose of reviewing the determination of the military judge." *Kyle,* 32 M.J. at 726. The sealed exhibit has no other purpose, and its existence in the record for that purpose does not supply any authority for the proposition that it may be examined by the parties for some other purpose for which it is coincidentally convenient.[24]

■ The question is to what extent appellate counsel may participate in that appeal. We believe that the general rule is that appellate counsel have no general right of access to sealed exhibits. Only judges have that right. We infer this general rule from the purpose of sealing—appellate review that must still assure protection—and from the provisions of R.C.M. 701(g)(2) and Fed.R.Crim.P. 16(d)(1).

■ R.C.M. 701(g)(2) provides that sealed material "may be examined by reviewing authorities." Fed.R.Crim.P. 16(d)(1) is even more clear, referring to making sealed material "available to the appellate court." The obvious change in language suggests some change in meaning, and appellant argues that "reviewing authorities" includes the appellate counsel. We hold that it does not. Unlike civilian appeals, military appellate review includes reviews of convictions by authorities other than courts, *e.g.,* Articles 64 (review by a judge advocate) and 69 (review in the Office of the Judge Advocate General), UCMJ, 10 U.S.C. §§ 864 and 869 (1988).

---

21. We have not observed this practice of stating the terms of the seal in military practice, but we recommend it. Those terms should state the duration of the seal and the intended viewers in terms that reflect the objectives of the seal, *e.g., United States v. Sarkissian,* 841 F.2d 959, 964–66 (9th Cir.1988) (national security); *United States v. Napue,* 834 F.2d 1311, 1317 (7th Cir.1987) (protective order to protect witness from "physical or economic harm"); *United States v. Pringle,* 751 F.2d 419 (1st Cir.1984) (classified information); *United States v. Roberts,* 793 F.2d 580 passim (4th Cir.1986), *vacated,* 811 F.2d 257 (4th Cir.1987) (en banc) (protection of witnesses); *United States v. Garcia,* 625 F.2d 162, 165–66 (7th Cir.1980), *cert. denied,* 449 U.S. 923, 101 S.Ct. 325, 66 L.Ed.2d 152 (1980) (protection of informants); *United States v. Pelton,* 578 F.2d 701, 706–7 (8th Cir.1978) (protection of persons cooperating with the prosecution). However, it is not enough simply to limit that protection to the duration of the trial, as appellant implies as to seals intended to protect witnesses and evidence: the perils of appellate review may require protection of witnesses and evidence through appeals, remands for fact-finding, and retrials until the case is final, and perhaps even until companion cases are final.

22. *See generally,* 2 Wright, *supra* n. 8, at § 258, 115 n. 4 and 115–16.

23. Indeed, the advice in *Kyle* that appellate reviewers would be convenienced if trial judges inventoried the things they examine *in camera,* 32 M.J. at 726, came from this case, which was then under review.

24. Appellant has argued that R.C.M. 701 bestows a right of discovery even at the appellate level. We disagree. It is written with trial and pretrial activities clearly in mind, and its text never implies such a right on appeal. It appears in chapter VII of the Rules, entitled "Pretrial Matters." Finally, its civilian counterpart, Fed. R.Crim.P. 16, "addresses only pretrial discovery." 2 Wright, *supra* n. 8, at § 251, p. 35.

Thus, the drafters of the military rule needed a broader term with which to reach the same result, that the right to review and appeal is preserved without necessitating disclosure. Appellant might still contend that *in*cluding "a judge advocate" and persons acting for The Judge Advocate General does not by logic require that the appellate counsel be *ex*cluded, and that is true. However, "reviewing authority" is a "person or appellate agency who must approve and affirm the findings and sentence of a court-martial before sentence may be carried out." *United States v. Redding,* 11 M.J. 100, 103 (C.M.A.1981), quoting Dahl and Whelan's *Military Law Dictionary* and citing other authorities. The law has changed since Messrs. Dahl and Whelan wrote, but we think that the usage of the term remains the same. We hold that an appellate counsel is not a "reviewing authority" within the meaning of R.C.M. 701(g)(2) and therefore has no right of access under that rule to exhibits sealed at trial unless the terms of the seal permit.[25]

■ We are certain that there are settings in which appellate counsel may still have access to a sealed exhibit. The most obvious is when the decision to seal at all was demonstrably improvident when made and any need for protection[26] has been shown to have abated. The burden of persuasion in such a matter must be borne by the party moving to unseal. In this case, one might well argue that it was entirely unnecessary that these exhibits accompany the record and conclude that the sealing was improvident, but the two thoughts are separate. It is true that there was no need to append these exhibits to the record, but the military judge did that anyway. Once he did so, sealing them was appropriate. They range from intimate personnel records to drafts of personnel actions to internal review and advice. They were not used as evidence, and there was no reason to expose them to general view. Thus, the personal and institutional interests in privacy warranted the seal, once the military judge decided to append the records, however mistaken that choice might have been. No one has shown those interests to have abated.

■ We need not decide the full dimensions of the exceptions today except to note that we have examined the documents and considered appellant's motion on its merits, and we find no cause to unseal the documents or to permit access to them by appellate counsel. We have followed the example in *United States v. Garcia,* 625 F.2d 162, 165 (7th Cir.1980), in this respect, balancing the competing interests. On the one hand, appellant is no longer entitled to review of a denial of discovery, because discovery was granted. On the other, the obvious intent of sealing these records was to protect the privacy of the persons and

---

**25.** Appellate defense counsel has reminded us of our insistence that appellate counsel investigate the legal and factual underpinnings of their assignments of error before asserting them, *e.g., United States v. Daffron,* 32 M.J. 912, 915 n. 4 (A.F.C.M.R.1991), *pet. denied,* 34 M.J. 75 (C.M.A. 1991); *United States v. Barnard,* 32 M.J. 530, 533 (A.F.C.M.R.1990), *pet. denied,* 33 M.J. 484 (C.M.A.1991), reasoning therefrom that such an assignment of responsibility must necessarily imply a co-extensive grant of the necessary tools. That principle of good management does not prevail in law as appellant urges. To acknowledge a duty does not imply that all the tools convenient to the task are granted. Thus, the duty to defend a client does not imply that a defense exists in law or fact. Counsel's duty to investigate must be discharged with the resources available, and they must suffice.

**26.** In addition to the examples of needs cited at n. 20, *supra,* Wright might add that sealing and protective orders can help prevent some of the ills that some argue follow too generous discovery, *e.g.,* perjury, bribery, and otherwise influencing testimony to counter the information learned through discovery. *See* 2 Wright, *supra* n. 8, at § 252. We do not emphasize them now because they are typically abated by the time of appeal, but we must also note that appeals can sometimes result in new trials, rehearings, and factfinding hearings. Thus, showing that the need has abated is not simple as showing that the original trial is over.

Conversely, it sometimes occurs that the lapse of time after trial abates some of the vigor with which a custodian asserts a privilege. Thus, another panel of this Court recently was asked to permit defense access to a sealed exhibit that was apparently privileged under Mil.R.Evid. 506. Despite the privilege, appellee had no objection to limited disclosure, and access was granted according to the terms proposed by appellee.

institutions concerned. There is no suggestion that the privacy interest has expired, and it is clearly dominant under the circumstances of this case. Momentarily we close this issue by dealing with appellant's last remaining argument about it, but first it is helpful to address another.

### IV. Extrinsic Evidence to Impeach

Appellant complains that she was wrongly prevented from impeaching government witnesses with extrinsic evidence. She claims that she would have used the OSI regulation that way, had her discovery motion been granted, and that she would have used the sealed documents that way, had the military judge let her.

The use of extrinsic evidence to impeach is governed by Mil.R.Evid. 608(b) and (c). It may not be used as evidence of specific episode if the purpose is to attack or bolster credibility. Mil.R.Evid. 608(b). However, it may be used if the evidence shows bias, prejudice, or any motive to misrepresent. Mil.R.Evid. 608(c).[27]

We have observed above that the only use of the OSI regulation would have been to test the investigators on their compliance with its management provisions. That could have shown (assuming the worst) that the agents were sloppy or inattentive, characteristics that they might wish to conceal, but not characteristics showing bias, prejudice, or a motive to misrepresent in their testimony about the appellant. The OSI regulation was never shown to have any such value.

▆▆▆▆ This is an area in which the military judge's latitude is quite broad. *United States v. Hodge*, 29 M.J. 304 (C.M.A.1989) (summary disposition) (Mil.R.Evid. 608(c), extrinsic evidence to impeach); *United States v. Tyler*, 26 M.J. 680, 681–82 (A.F.C.M.R.1988) (Mil.R.Evid.

608(b), military judge has wide discretion to regulate use of bad acts in impeachment, review for abuse); *see* Mil.R.Evid. 403; *United States v. Jenkins*, 27 M.J. 209, 211 (C.M.A.1988) (under Mil.R.Evid. 403); *United States v. Brooks*, 22 M.J. 441, 444 (C.M.A.1986) (same); *United States v. Owens*, 21 M.J. 117, 124 (C.M.A.1985) (same); *see also United States v. Everage*, 19 M.J. 189, 194 (C.M.A.1985) (Mil.R.Evid. 608(a); abuse of discretion); *cf. United States v. Spindle*, 28 M.J. 35, 37 (C.M.A.1989) (judge has discretion to regulate impeachment under Mil.R.Evid. 608(c)). The sealed documents were examined by the military judge and by the defense counsel. We have also examined them. They do not show bias, prejudice, or a motive to misrepresent any of the topics covered in testimony, and the military judge did not abuse his discretion by denying use of them as extrinsic evidence in impeachment.[28]

### V. Access to the Sealed Documents Revisited

Appellate defense counsel belatedly claim in the assignment of errors that they are hindered in this appeal on the issue of impeachment by our denial of access to the sealed documents. Their argument is that they could have done a better job on this issue had we granted their earlier interlocutory motion to unseal them. As our opinion suggests, we first reply that, be that as it may, we can examine the sealed documents for ourselves and deal with the issue, just as we would in any other discovery dispute and just as we would had the case been submitted on its merits, without an assignment of errors. We have that duty, Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988), and we meet it as part of our routine. As we noted above, we did so in this case. That appears to be a complete

---

27. Appellant reminds us of our decision in *United States v. Cerniglia*, 31 M.J. 804 (A.F.C.M.R. 1990), but it only illustrates the application of the rule and does not change it.

28. We notice that this assignment is really just an attempt to market the denial of discovery of the regulation a second time in different packaging. The issue was that denial, and what use appellant might have made of the information

had he received it is really only relevant to whether the military judge abused his discretion by denying it. We have treated that aspect already, but we also respond to the issue as framed here because discovery law is not well developed in our practice. Appellant has assigned the error in good faith, it has superficial merit, and she is entitled to an answer.

reply to an imperfect motion to unseal documents, but we go further now to assure that we answer this assignment completely.

This tack smacks of the kind of "appeal by ambush" that we recently criticized in *United States v. Toro*, 34 M.J. 506 (A.F.C.M.R.1991). When appellant moved for access to the sealed documents, her counsel did not relate the motion to their need to develop the appellate argument on impeachment. We then invited briefs from the parties. Though appellant's counsel gave us an excellent 9–page brief, they never mentioned impeachment in it. We then denied the motion because, the discovery having been granted at trial, no issue had been brought to our attention that remained for review. In the natural flow of appellate events, only later did appellant file the assignment of errors, and only then did she assert for the first time that there might be any connection between examination of the impeachment issue and her quest for access to the sealed exhibits.

Thus, appellant (likely inadvertently) held back part of her argument to reserve it as a theory for relief when the relief sought was not granted! As we note, we believe counsel to have acted in good faith, but we nonetheless dislike being mouse-trapped. While Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988), requires us to comb through the record for error, it does not require us to comb through counsel's mind when determining a motion. Instead, our rules require counsel to "state with particularity the relief sought *and the grounds therefor.*" Courts of Military Review Rules of Practice and Procedure, 22 M.J. CXXVII, CXXXVII, rule 23(a) (emphasis added).[29]

We will ignore counsel's argument that our lack of clairvoyance constitutes error, but we have also reconsidered our denial of access to the sealed exhibits in light of this new argument. We find no reason to grant access or order the documents unsealed.

### VI. Sufficiency of the Evidence

Appellant brings to our attention that her conviction on two of the specifications in her case rested mainly on the testimony of other drug abusers, a kind of evidence whose weakness was pointed out in *United States v. Corbett*, 29 M.J. 253 (C.M.A.1989) (Cox, J., concurring and dissenting), *cert. denied*, 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989). Judge Cox noted his grave reservations that such convictions might be based on, "at worst, guilt by association." *Id.* at 258. We also note that Judge Cox has reflected further upon this position in *United States v. Rounds*, 30 M.J. 76, 82 (C.M.A.1990) (Cox, J., concurring), *cert. denied*, ——— U.S. ———, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). We share his natural suspicion of such testimony, *United States v. Ladell*, 30 M.J. 672, 674 (A.F.C.M.R.1990), and we take into consideration the qualifications of witnesses who identify substances as drugs and their basis for that knowledge.

■■■■ "The test for [legal sufficiency] is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is "whether, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

■■■ We have examined the evidence as to all the specifications, as we are required to do by Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988). We are satisfied that the evidence is, in each case, sufficient as a matter of law, and we are also convinced beyond a reasonable doubt that the appellant is guilty as found by the court-martial.

---

**29.** *See generally* annotation, "Sanctions, in Federal Circuit Courts of Appeals, for Failures to Comply with Rules Relating to Contents of Briefs and Appendices," 55 A.L.R. Fed. 521 (1981).

## VII. Sentencing Evidence

Appellant notes, without assigning it as error,[30] that her "commander testified that the impact of the 27 people involved in the drug investigation was significant." Appellant objected to the testimony, but her objection was overruled. There is no suggestion in the record that the military judge later decided not to consider the evidence.

■ Aggravation evidence based on "adverse impact on the unit" must be that which was "directly *relating to or resulting* from the offenses of which the *accused* has been found guilty," not the investigation of the *other* 26 suspects. R.C.M. 1001(b)(4); *United States v. Bartoletti*, 32 M.J. 419 (C.M.A.1991); *United States v. Thornton*, 32 M.J. 112 (C.M.A.1991); *United States v. Gordon*, 31 M.J. 30, 35–36 (C.M.A.1990).

■ In most cases tried by a military judge alone, we would apply the presumption that the military judge knows and follows the law. *See, e.g., United States v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227, 231 (1970); *United States v. Goldsmith*, 29 M.J. 979, 985 (A.F.C.M.R. 1990). However, this military judge gave some indication that he misunderstood this evidence to be admissible and did consider it, and there are none of the oft-found acknowledgements by the military judge that he would limit his consideration to the extent he might find permissible in his deliberations, if any at all. In such a case the presumption is less apt. *Cf. United States v. Hoxsie*, 14 M.J. 713, 716 (N.M.C.M.R. 1982), *pet. denied*, 15 M.J. 95 (C.M.A.1983).

The military judge erred, and we will reassess the sentence to cure the error.

## VIII. Sentence Appropriateness

As we noted above, appellant was sentenced by the military judge after conviction of six specifications of drug abuse that included divers uses of two different drugs in three countries during 21 months and two introductions (one of yet a third drug) onto a military base. She was sentenced to be discharged from the service with a bad-conduct discharge, to be confined for 36 months, to forfeit $482 of her pay per month for 36 months, and to be reduced to E-1. The convening authority approved the sentence as adjudged.[31] Appellant now complains that the sentence is inappropriate.

■ We have recently observed in a case that involved one of appellant's associates that—

> We take notice of the lengthy history of this Court's acknowledgements of the seriousness of drug crimes, *see, e.g., United States v. Baker*, 2 M.J. 360 (A.F.C.M.R.1977), and our insistence that the penal hazards are widely known, *see, e.g., United States v. Holt*, 28 M.J. 835 (A.F.C.M.R.1989). One who persists despite the explicitly clear warnings, now emphatically declared, does so at his own risk that, as the plague continues, triers of sentence will express the ever increasing disapproval of the community.

*United States v. Toro*, 34 M.J. 506 (A.F.C.M.R.1991). Here, too, we are satisfied that the sentence is not inappropriate. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988); *United States v. Wingart*, 27 M.J. 128 (C.M.A.1988); *United States v.*

---

30. *See* Courts of Military Review Rules of Practice and Procedure, 22 M.J. CXXVII, CXXXII, rule 15(a) ("separately").

31. Appellee's counsel has, with commendable candor, brought to our attention that the staff judge advocate's recommendations under R.C.M. 1106 significantly misstated the maximum imposable punishment. We note in this regard that advice on that topic is not required, R.C.M. 1106(d), and we wonder what value the information has. However, as appellee's coun-

sel observed, the error drew no comment from the defense when the recommendations were served on the defense as required by R.C.M. 1106(f). Accordingly, the error was waived. R.C.M. 1106(f)(6); *United States v. Goode*, 1 M.J. 3 (C.M.A.1975); *see generally, United States v. Komorous*, 33 M.J. 907 (A.F.C.M.R.1991); *United States v. Ralbovsky*, 32 M.J. 921 (A.F.C.M.R. 1991).

We also note that the staff judge advocate's recommendations were quite lengthy. *See United States v. Smith*, 33 M.J. 968 (A.F.C.M.R.1991).

*Snelling,* 14 M.J. 267, 268 (C.M.A.1982); *United States v. Ciulla,* 29 M.J. 868 (A.F.C.M.R.1989), *aff'd,* 32 M.J. 186 (C.M.A.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 172, 116 L.Ed.2d 135 (1991).

██ However, we must reassess the sentence to cure the error we noted above to assure that no greater sentence is approved than would have been adjudged at trial, had the error not occurred. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990); *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986). *See generally, United States v. Waits,* 32 M.J. 274, 276–77 (C.M.A.1991). We are satisfied that we can do so. We determine that, absent the error, the sentence adjudged at trial would not have exceeded a bad-conduct discharge, confinement for 30 months, forfeiture of $482.00 pay per month for 30 months, and reduction to E–1.

We now consider the entire record, *United States v. Healy,* 26 M.J. 394 (C.M.A. 1988), and we find the sentence as reassessed not inappropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988).

Accordingly, we find that the findings of guilty and so much of the sentence as provides for a bad-conduct discharge, confinement for 30 months, forfeiture of $482.00 pay per month for 30 months, and reduction to E–1 are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Chief Judge O'BRIEN and Senior Judges O'HAIR and PRATT, concur.