UNITED STATES, Appellee,

v.

Private First Class Douglas J. HALLEY, 560–08–3974, United States Army, Appellant.

No. ACMR 9002528.

U.S. Army Court of Military Review.

15 April 1992.

For Appellant: Captain Robin N. Swope, JAGC, Captain Michael W. Meier, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

A military judge sitting as a general court-martial, convicted the appellant, contrary to his pleas, of attempted unpremeditated murder, assault consummated by a battery upon a child under the age of sixteen years (two specifications), and false swearing, in violation of Articles 80, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 928, and 934 (1982), respectively.[1] The convening authority ap-

proved the adjudged sentence of a dishonorable discharge, confinement for eleven years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant, *inter alia*, asserts that the evidence is insufficient to support the findings of guilty of: (1) the two specifications of assault consummated by a battery; and, (2) false swearing. We agree that the evidence is insufficient as to one of the specifications of assault consummated by a battery. That specification involved shaking the child in an attempt to quiet him.

### I. The Assault

The subject of the appellant's possible involvement in child abuse arose on 4 October 1989, when the appellant and his wife took their seven-month-old boy to the local military hospital where an examination by medical personnel revealed the child had suffered a massive skull fracture and spinal cord injury. This caused the hospital personnel to suspect child abuse, which they reported to criminal investigative authorities. A Criminal Investigation Command (CID) agent conducted the investigation, which included questioning the appellant. The appellant rendered a sworn, exculpatory statement, stating that he had been holding the child preparatory to feeding him when the child fell backward, hitting his head on a kitchen counter while the appellant retained his grasp on the child's legs. The appellant said he performed first aid and waited until his wife, also a servicemember, arrived home before taking the child to the hospital. The appellant denied purposely dropping the child or striking him on this occasion. This incident resulted in the charges of attempted murder, and his sworn statement to the CID investigator formed the basis of the false swearing charge.

At trial, the government presented expert medical testimony that a physical examination of the child conducted on or about 4 October 1989, revealed evidence that the child had incurred a fractured clavicle and ribs on occasions prior to 4 Octo-

---

**1.** At this same trial, the appellant was acquitted of premeditated murder after the same child died under suspicious circumstances several months later.

ber, and that the child had incurred face and gum injuries in late September. These injuries led to two aggravated assault charges (of which the appellant was acquitted) and one assault and battery charge (of which he was convicted). All of the child's injuries were consistent with a pattern of physical abuse. In addition, the senior Army neurosurgeon in Europe testified that he had treated the child on 4 October and that the injury incurred by the child on that date was inconsistent with the appellant's description of how the injury occurred. Finally, eyewitness testimony of friends described an incident in which the appellant shook the child to quiet it. It is the charge resulting from this shaking incident that we find factually insufficient.

The appellant's wife, testifying under a grant of immunity, denied ever hitting the child, denied knowing of the previous fractures of the clavicle and ribs, and was shocked when a doctor told her that he suspected child abuse. She also testified that the injury to the child's gums probably occurred when she, pursuant to a doctor's advice, rubbed a pain killer on the child's gums because of a teething problem. However, the testimony of the physician who first noticed the facial bruising during a visit to his clinic on 25 September contradicted the wife's in-court testimony. The physician recalled that the wife attributed the facial bruising to the appellant's actions. He also testified that the normal force required to open an infant's mouth would not have caused the bruising.

The wife's testimony that her husband never hit the child was belied by numerous entries in the wife's diary. In a diary entry dated 20 September, she attributed bruises on the child to the appellant's roughness. Another entry dated 2 October, described the appellant's rages because of the child's thumb-sucking and her admonitions to treat the child with more gentleness. The diary, however, also described her own depression, frustration, and anger with being tied down by her child and by her marriage. The wife also testified that she harbored doubts, known to the appellant, that the appellant was the father of the child. The government argued that the doubts regarding the child's paternity was a motivating factor in the appellant's abusive actions.

A friend of the wife testified concerning the shaking incident in May or June, when the child was three months old. He was present in the appellant's home when the appellant became frustrated with the child's crying, heard the appellant say in a loud voice, "Shut the fuck up," and saw him hold the baby in the air and shake him. The friend minimized the shaking, saying that "he wasn't shaking him that hard. He was shaking him but it seemed more or less to get his attention. It wasn't vigorous." However, the witness admitted that any shaking of a child of that age was not normal. Another witness to the shaking incident described the shaking as a "gentle, rhythmic up and down bouncing." This second witness, who was a noncommissioned officer and mother, took the baby from the appellant because she felt she could do a better job quieting the child. It took a few minutes for the child to fall asleep. There was no further eyewitness evidence and no medical evidence of injury to the child from the shaking.

■ The standard for reviewing the legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is personally convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. 324.

■ Using the standard set out in *Turner,* we are simply not convinced that the equivocal testimony of the witnesses regarding the nature of the shaking supports a finding of guilty of the offense of assault consummated by a battery.

## II. The False Swearing

At trial, the government presented evidence from the CID investigator that, as part of his investigation of the appellant for suspected child abuse, he took a written statement from the appellant on 4 October 1989, and that he administered an oath to the appellant who attested to its truth. The military judge properly admitted the statement into evidence as a prosecution exhibit. On the exhibit, following the text of the statement itself is the appellant's signature. Immediately below the appellant's signature is a notation: "Subscribed and sworn to before me, a person authorized by law to administer oaths," and the date and place of the swearing. Thereafter, the CID agent's signature appears, followed by his typewritten authority to administer oaths: "Article 136(b)(4), UCMJ." [2] The trial counsel did not ask the military judge to take judicial notice of Article 136, 10 U.S.C. § 936, nor did the military judge, *sua sponte*, announce that he, as fact finder, was judicially noting that statutory authority.

The appellant asserts for the first time before this court that, because of the failure of the military judge to specifically take judicial notice of Article 136, the evidence is insufficient as a matter of fact and law to prove that the CID agent was authorized to administer an oath. The government counters that the authority to administer an oath is included on the sworn statement itself, and that the reference to Article 136(b)(4), typed onto the statement by the CID agent immediately below his signature as "administering official" is sufficient evidence of the CID agent's authority. We generally agree with the government's position.

■ An element of the offense of false swearing under Article 134, UCMJ, is that the oath was administered by a person having authority to do so. Manual for

Courts–Martial, 1984, Part IV, para. 79b(3) [hereinafter MCM]. It is clear that a CID investigator has authority to administer oaths. *See generally United States v. Whitaker*, 32 C.M.R. 341 (C.M.A.1962); *United States v. Claypool*, 27 C.M.R. 376 (C.M.A.1959); *United States v. Guthrie*, 14 C.M.R. 848 (A.B.R.1954) (cases discuss police investigators' power to administer oaths). The sufficiency of proving that authority at trial is the issue in the case before us.

■ Under Mil.R.Evid. 201(c),[3] a military judge may take judicial notice whether requested to do so or not. If the military judge, *sua sponte*, takes judicial notice of an adjudicative fact essential to establishing an essential element of the case, he must so inform the parties in open court. *Id.*[4] Under Mil.R.Evid. 201A, domestic law may be judicially noticed, and insofar as domestic law "is a fact that is of consequence to the determination of the action," the parties must be notified in open court and given an opportunity to be heard. *Id.*; Mil.R.Evid. 201A; *United States v. Mead*, 16 M.J. 270 (C.M.A.1983); *United States v. Branoff*, 34 M.J. 612, 619 n. 10 (A.F.C.M.R. 1992); *United States v. Chairez*, 17 M.J. 787 (A.F.C.M.R.1983). Whether Article 136 is a "fact that is of consequence to the determination of the action" is debatable. *See Mead*, 16 M.J. at 271–72 and *Chairez*, 17 M.J. at 789. However, we will assume without deciding that it is. *See* Salzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual*, p. 90 (3rd ed. 1991).

■ In *United States v. Hill*, 31 M.J. 543 (N.M.C.M.R.1990) our brothers of the Navy–Marine Corps Court of Military Review refused to affirm a false swearing conviction in the absence of some indication that the military judge took judicial notice of the regulatory basis of the naval investigator's authority to administer an oath,

---

**2.** Article 136(b)(4), UCMJ, provides that all persons on active duty detailed to conduct investigations may administer oaths necessary in the performance of their duties.

**3.** Manual for Courts–Martial, 1984, Mil.R.Evid. 201 [hereinafter Mil.R.Evid.].

**4.** *But see generally*, McCormick, *Evidence*, Chapter 35, § 333 Judicial Notice, Procedural Incidents, at pp. 934–36 (3rd ed. 1984) (notice to the parties is not generally required).

even though the regulatory authority for administering the oath was subscribed on the sworn statement. That court found that the mere recitation of authority, without more, provided an insufficient basis to infer the proof of the actual authority. We note that, while the defense counsel in *Hill* did not object to this reference subscribed on the statement, the defense counsel did raise the issue of the sufficiency of the evidence at trial during argument on findings and in a motion for a finding of not guilty. *Id.* at 544 n. 1.

Taking a different view from the Navy–Marine Corps court, this court recently found that the citation of authority to administer oaths subscribed upon a sworn statement can be sufficient evidence of the authority of the person administering the oath. *United States v. Simmons*, 33 M.J. 883, 886 (A.C.M.R.1991). In the *Simmons* case, involving a court composed of members, the military judge did not specifically announce that he was noticing judicially Army Reg. 15–6 Boards, Commissions, and Committees: Procedures for Investigating Officers and Boards of Officers (1 May 1988) [hereinafter AR 15–6], the regulatory basis for administering an oath in that case. The citation of authority written upon the sworn document itself permitted this court in *Simmons* to find legal and factual sufficiency.[5]

In the present case, the investigating CID agent testified that he was conducting an investigation of the appellant at the time he swore the appellant to the truth of the appellant's statement. As in *Simmons*, the authority for administering the oath was subscribed on the sworn document itself.[6] We believe that this written citation to Article 136(b)(4) subscribed on the document is evidence of the authority to administer an oath and provides suffi-

cient notice to the defense of the legal basis of the oath. In the absence of evidence to the contrary, a presumption arises that the person administering an oath is authorized to do so. *United States v. Willis*, 7 M.J. 827, 829 (C.G.C.M.R.1979), citing *United States v. Masusock*, 1 C.M.R. 32 (C.M.A.1951) and *United States v. Andrews*, 1 C.M.R. 162 (A.B.R.), *pet. denied*, 1 C.M.R. 98 (C.M.A.1951). We find that the unchallenged documentary evidence of authority to administer an oath contained on a sworn statement can be sufficient to support a fact finder's determination as to this element of the offense of false swearing.

We recognize that in *United States v. Williams*, 3 M.J. 155 (C.M.A.1977), the Court of Military Appeals declined to notice judicially the Army's drug prohibition regulation or to presume that the trial judge took judicial notice of the regulation. In *Williams*, that court reversed a conviction of a soldier for violation of a lawful general regulation by selling marijuana because the military judge failed to notice judicially the Army regulation prohibiting that activity. In that case, there was no mention at trial and no evidence whatsoever of the contents of the regulation. The only reference to the regulation was in the specification on the charge sheet. These facts distinguish *Williams* from the case before us.

We hold that the unchallenged citation to Article 136(b)(4) contained on the appellant's sworn statement, a document properly admitted into evidence, is legally and factually sufficient to support the investigator's authority for administering an oath to the appellant. Utilizing the standards for legal and factual sufficiency, described *infra*, we find the evidence sufficient to support the appellant's guilt beyond a reasonable doubt of the offense of false swearing.

---

5. At trial, the military judge did instruct the members, without objection, that as a matter of law, an investigating officer is authorized to administer an oath. Moreover, his instruction to the members was, in effect, an irregular but functionally equivalent method of announcing judicial notice as required by Mil.R.Evid. 201(c).

Also, in *Simmons*, this court admitted a copy of the pertinent provisions of AR 15–6 as an appellate exhibit, citing *United States v. Brown*,

18 M.J. 360, 361 (C.M.A.1984). It further judicially noted the existence (and quoted the pertinent provisions) of Article 136.

6. While, unlike *Simmons*, there is no indication in the record that the military judge intended to take judicial notice of the statute, the lack of indication in the present case is understandable since the military judge was the fact finder.

The remaining assignments of error and the issues personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

 The finding of guilty of Specification 3 of Charge II is set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, and mindful of the requirements of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E1.

Senior Judge JOHNSON and Judge WERNER concur.