UNITED STATES, Appellee,

v.

**Michael R. BYERS, Technical Sergeant
U.S. Air Force, Appellant.**

No. 57,791.
ACM S27248.

U.S. Court of Military Appeals.

May 4, 1988.

For Appellant: *Captain Henry J. Schweiter* (argued); *Colonel Leo L. Sergi* (on brief); *Captain Charles L. Wille.*

For Appellee: *Captain Marc Van Nuys* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

Amicus Curiae on behalf of Appellant: *Robert J. Stovash,* 3d Year Student and *Anuraag Singhal,* 2d Year Student (argued); *Carol B. Anderson,* Esq. Assistant Director, Clinical Program, *Brian DuBuc,* 3d Year Student, *Daniel Sroka,* 2d Year Student (on brief)—on behalf of Wake Forest University School of Law Clinic Appellate Program.

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a special court-martial at Charleston Air Force Base, South Carolina, on a charge of wrongfully using marijuana between January 21 and February 21, 1986, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. After unsuccessfully moving to suppress a pretrial confession, Byers entered conditional pleas of guilty. The military judge accepted the pleas, and the members sentenced Byers to a bad-conduct discharge, confinement and forfeiture of $100 pay per month for 4 months, and reduction to E-1. Apart from a reduction of the confinement to 73 days, the convening authority approved these results; and the Court of Military Review affirmed in a short-form opinion. We granted review of this issue:

> WHETHER APPELLANT'S WRITTEN AND ORAL ADMISSIONS SHOULD HAVE BEEN SUPPRESSED BECAUSE APPELLANT WAS NOT ADVISED, PRIOR TO INTERROGATION, OF HIS RIGHTS ACCORDING TO ARTICLE 31, UCMJ.

I

On April 14, 1986, Sergeant Byers was summoned to the Office of Special Investigations (OSI) at Charleston Air Force Base by Special Agent Fleshman. At the time, Fleshman was aware that appellant had recently tested positive for tetrahydrocannabinol (THC) on a urinalysis; and so he suspected appellant of wrongfully using marijuana.

When Byers arrived at the OSI office, Special Agent Fleshman did not immediately advise him of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b). Instead, Fleshman asked appellant if he knew "why he was called down to the OSI office," told him that his urine sample had tested positive for marijuana, and then asked Byers to accompany him to the interrogation room for an interview. The first 20 to 40 minutes of the ensuing interview were described by Special Agent Fleshman in this manner:

> I told him that I would be talking that to him today about narcotics. I told him that at this point I would not like for him to make any statements, but rather to listen to what I had to say. From there I told him that he would have several options available to him, one was to face the issue at hand, which was that he had a positive drug urinalysis and I would be questioning him about that, and it was perfectly clear, and there was no doubt in my mind that he had used marijuana, but he would have to face the situation by cooperating with the Government in the form of making a full admission and

possibly providing a signed, sworn statement or he had the option of leaving the interview room at any time.

According to Fleshman, this commentary was "the first part of our interrogation"; and thereafter, he warned Byers of his Article 31(b) rights before asking him any questions. Byers then made an oral admission; and, after some time, they were joined by Special Agent Mitchell. Appellant was again advised of his rights and thereupon made a written confession of marijuana use.

Appellant's version of the interrogation was different. According to him, Fleshman did not advise him of his rights until after he had admitted to using marijuana and indicated his willingness to make a written statement. Also, appellant testified that Fleshman had instructed him to state in his written confession that he had previously been advised of his rights.

## II

### A

The military judge apparently accepted Fleshman's account of the interview and rejected appellant's. However, even Fleshman's own testimony reveals a violation of Article 31(b), which provides:

> No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

*See also* Mil.R.Evid. 305, Manual for Courts-Martial, United States, 1984.

Pursuant to congressional intent, this Court has construed Article 31(b) broadly.

Thus, a single question may constitute interrogation or a request for a statement, *see, e.g., United States v. Wilson*, 2 U.S.C.M.A. 248, 8 C.M.R. 48 (1953); and a "statement" may include identification of clothing, *United States v. Taylor*, 5 U.S.C.M.A. 178, 17 C.M.R. 178 (1954), or pulling out a pass, *United States v. Nowling*, 9 U.S.C.M.A. 100, 25 C.M.R. 362 (1958).

Moreover, we have held: "When conversation is designed to elicit a response from a suspect, it is interrogation, regardless of the subtlety of the approach." *United States v. Borodzik*, 21 U.S.C.M.A. 95, 97, 44 C.M.R. 149, 151 (1971). Thus, investigators are interrogating a suspect when they inform him "that he has been implicated by someone else"—a technique which we have described as "time honored." *United States v. Muldoon*, 10 M.J. 254, 257 (C.M.A. 1981); *United States v. Hill*, 5 M.J. 114, 116 (C.M.A. 1978).

██ Our construction of "interrogate" for purposes of Article 31(b) corresponds with the Supreme Court's interpretation of "interrogation" in applying the warning requirement of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Indeed, in *Muldoon*, we noted that the Supreme Court had recognized that certain conduct by investigators is "the 'functional equivalent' of interrogation." [1] This recognition was based on the information about police methods recited in *Miranda*. *See* 384 U.S. at 448–56, 86 S.Ct. at 1613–18. If we were not equally realistic in our treatment of investigative tactics which are "the 'functional equivalent' of interrogation," we would be providing investigators a ready means for circumventing Article 31(b) and thwarting congressional intent.

### B

██ From this perspective we cannot approve the tactics employed by Special

---

**1.** *See* 10 M.J. 254, 257, which refers to *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *see also United States v. Dowell*, 10 M.J. 36 (C.M.A. 1980). In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), which was a Sixth-Amendment case involving a detective's "Christian burial speech" to a suspect, the Supreme Court also seems to have recognized that conduct which has the same effect as "interrogation" should be subject to the same limitations.

Agent Fleshman. Article 31(b) contemplates that the rights warnings should be given when an interrogation begins—not at its midpoint. Fleshman himself described the 20 to 40 minute interview as "the first part of our *interrogation*" (emphasis added); and so by his own testimony, he has admitted noncompliance with Article 31(b). Moreover, Fleshman's statement to appellant that the urinalysis had been positive and that "there was no doubt in my mind that he had used marijuana, but he would have to face the situation by cooperating with the Government in the form of making a full admission and possibly providing a signed, sworn statement" is akin to telling a suspect that he has been implicated by someone else—which we have held to be "interrogation." *United States v. Muldoon,* and *United States v. Hill,* both *supra.* Cf. *United States v. Dowell,* 10 M.J. 36 (C.M.A. 1980).

As Chief Justice Warren pointed out in *Miranda,* interrogators seek to deprive suspects "of every psychological advantage," 384 U.S. at 449, 86 S.Ct. at 1614–15. To this end, "the manuals instruct the police to display an air of confidence in the suspect's guilt and from outward appearance to maintain only an interest in confirming certain details. The guilt of the subject is to be posited as a fact." *Id.* at 450, 86 S.Ct. at 1615. Obviously, Fleshman's lecture to appellant conformed to this precept.

■ We also note that requiring a suspect ·to sit through a lecture by an investigator before he is advised that he has any rights helps induce a feeling of helplessness and emphasizes the dominance of the investigator over him. In turn, this makes him more ready to confess when he is questioned. While this technique for inducing confessions may be desirable from an investigator's standpoint, it does not correspond to what Congress had in mind

when it enacted Article 31(b). Instead, Congress prescribed that, before attempting directly or indirectly to induce the making of a statement, the investigator should advise a suspect of the offense of which he is suspected,[2] his right to remain silent, and the legal consequences if he chooses to speak.

### III

If, as he testified, Byers had made an unwarned oral admission before receiving any Article 31(b) warnings, he could argue that his later written confession was tainted by the earlier admission. However, the military judge apparently accepted Fleshman's testimony that Byers had made no statement whatsoever before receiving a complete warning of his rights. Thus, we must determine whether Fleshman's noncompliance with Article 31(b) in and of itself precluded reception of the written confession in evidence.

■ Even though Special Agent Fleshman's tactics did not conform with Article 31(b), we are unconvinced that they created a presumptive taint so great that it could not be cut off by a rights warning. Instead, we conclude that his noncompliance with Article 31(b) was one circumstance to be considered along with others in determining whether the statements made by appellant after receiving a warning were voluntary. The military judge apparently determined this issue adversely to appellant; and we conclude that there was enough evidence in the record to sustain that determination.

### IV

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

---

**2.** In telling a serviceman that he is suspected of drug use, it would be permissible to state that the suspicion results from a positive drug test. To go further violates Article 31(b).