**UNITED STATES**

v.

**Staff Sergeant Steven L. KRAMER, FR 535–72–3937, United States Air Force.**

**ACM 28255.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 27 Oct. 1989.

Decided 13 April 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan. ·

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni; Captain David G. Nix and Major Charles E. Ambrose, Jr., USAFR.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

On 25 July 1989, the Facility Manager at a missile site reported that an automatic teller machine (ATM) card had been stolen from his wallet. The ATM card was used on 25 and 26 July to withdraw money from the owner's account. The card was seized by the ATM on 26 July after it had been reported missing.

The launch control facility at the missile site is a secure area and only seven individuals, the appellant and six others, were present when the ATM card was taken. The security police investigator considered everyone at the site "a possible suspect," but did not focus on a single individual. Accordingly, he did not give the interviewees a rights advisement when he questioned them on their activities between 25 and 29 July, when their tours of duty ended.

During these interviews, which were conducted individually, each interviewee was misled into believing that video tapes of the ATM withdrawals were available, and that the thief's fingerprints were on the ATM. The appellant was also told that fingerprints could be obtained even if the individual wore gloves. The investigator then falsely told the appellant that a civilian policeman was on duty near the bank and could identify the car the thief used. In addition, the investigator suggested to the appellant that fingerprint analysis involved great expense and manpower, and "if the person who did commit the offense came forward, he [the investigator] would brief the commander on that person's cooperation." The appellant was further told that the incriminating video tape would be available in a minute or so. At this point, and there is no dispute on this, the investigator leaned forward in his chair and asked the appellant, "We are not going to see your face on the tape are we?" The investigator acknowledged that the purpose of his questioning was to get a verbal or non-verbal response from those being questioned.

When the appellant indicated that a view of the tape was not necessary, the investigator concluded that the appellant was in-

deed a suspect. Appellant was then given the Article 31, 10 U.S.C. § 831 warnings and advised of his right to counsel. Thereafter, the appellant admitted stealing the ATM card and using it to withdraw money from the owner's account. The appellant also admitted attempting to steal additional monies from the account.

At trial the defense moved to suppress the appellant's statements to the security police investigator asserting that they were obtained in violation of Article 31(b), UCMJ. Specifically, the defense argued that the facts established that the interview of the appellant was an interrogation of a person suspected of an offense.

After lengthy and detailed findings of fact, the trial judge ruled that the investigator had no reasonable basis to treat the appellant as a suspect during the initial portion of the interview. Therefore, no Article 31 rights advisement was necessary until the appellant indicated that a review of the video tape was not necessary.

We accept the trial judge's essential findings of fact. We do not, however, accept his conclusion, based on those facts, that the appellant was not a suspect at the beginning of the interview and that the interview itself was not an interrogation designed to obtain incriminating admissions. *United States v. Burris*, 21 M.J. 140 (C.M.A.1985).

■ For purposes of Article 31 and the standards set forth in *Miranda/Tempia* *, an "interrogation" is defined as a formal or informal questioning in which any incriminating response either is sought or is a reasonable consequence of such questioning. *United States v. Barnes*, 19 M.J. 890 (A.C.M.R.1985), *aff'd* 22 M.J. 385 (C.M.A. 1986). Once the questioning becomes an interrogation, the "subtlety of the approach" is immaterial. *United States v. Borodzik*, 21 U.S.C.M.A. 95, 44 C.M.R. 149 (1971).

As the Court of Military Appeals observed in *United States v. Byers*, 26 M.J. 132, 134 (C.M.A.1988):

[I]nvestigators are interrogating a suspect when they inform him "that he has been implicated by someone else"—a technique which we have described as "time honored." [citations omitted]

In *United States v. Melanson*, 15 M.J. 765 (A.F.C.M.R.1983), *pet. denied* 16 M.J. 321 (C.M.A.1984), this Court held that an investigator's use of artifice or some other form of deception in an *interrogation* is permissible as long as the deceptive information is not likely to produce an untrue confession. Of course, an interrogation requires a proper rights advisement.

■ The investigative technique of lecturing a suspect on the weight of the evidence against him prior to a rights advisement is the "functional equivalent" of an interrogation. To permit such a practice would allow investigators an easy avenue to circumvent Article 31(b), and go against congressional intent. *United States v. Byers, supra; see also United States v. Steward*, 29 M.J. 724 (A.F.C.M.R.1989).

■ Military investigators should give an accused a rights advisement at any time they reasonably suspect him of an offense and intend to speak to him about it. *United States v. Spaulding*, 29 M.J. 156, 160 n. 2 (C.M.A.1989). Here the investigator knew that the appellant was one of only seven persons who had the opportunity to take the ATM card. His questioning of the appellant is almost a textbook example of a skilled criminal interrogation. The appellant is told that the incident is on film and the offender's face is visible, fingerprints of the thief are on the ATM card, and a civilian policeman can identify the car that was used. The appellant is also told that the incriminating video tape will be available momentarily, and if the person who committed the offense owns up, the interrogator will inform the commander about the individual's "cooperation." The appellant is then asked if his face will be on the

---

* *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

film. At trial the security police investigator candidly admitted that the purpose of the "interview" was to get a verbal or non-verbal response.

This record convinces us of two things: 1) the security police investigator should have reasonably suspected the appellant of an offense, and 2) the interview of the appellant by the investigator was the "functional equivalent" of an interrogation designed to obtain damaging admissions. In either situation, the appellant should have been given a codal warning and been advised of his right to counsel. *United States v. Spaulding, supra; United States v. Collier,* 1 M.J. 358 (C.M.A.1976); *United States v. Dean,* 13 M.J. 676 (A.F.C.M.R. 1982). The trial judge erred in admitting the appellant's statement to the security police investigator. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges SPILLMAN and PRATT concur.