**UNITED STATES**

v.

**Technical Sergeant David L. BARNES, FR261–15–7816, United States Air Force.**

**ACM 28771.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 June 1990.

Decided 5 Nov. 1991.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major Ronald G. Morgan, and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Colonel William T. Hoffman, Lieutenant Colonel Brenda J. Hollis, and Captain David G. Nix.

Before O'HAIR, RIVES and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

O'HAIR, Senior Judge:

Contrary to his pleas, Technical Sergeant Barnes was convicted of a failure to go to his appointed place of duty and wrongful use of cocaine. Although charged with desertion, in accordance with his pleas he was found guilty of a 3–week AWOL terminated by apprehension. A general court-martial panel of officers sentenced him to a bad-conduct discharge, confinement for 8 months, forfeiture of $225 pay per month for 6 months and reduction to E–1.

■ On appeal the appellant alleges it was error for the military judge to admit the results of a urinalysis test because it was not based on voluntary, informed consent. He also challenges the military judge's failure to *sua sponte* give the court members an instruction on inability as a defense to the charge of failure to go to his appointed place of duty. We find no prejudicial error and affirm.

The appellant was working a day shift on 2 October 1989. He failed to return to work after lunch and called several hours later to explain he had car trouble. His supervisor, TSgt Olsen, knew the appellant lived a distance away from the base, so he told appellant to take care of his car and that he need not return to work that day. On the following day appellant was not heard from until mid-afternoon when he called again. He explained the reason for his absence was that, on the prior evening, he had been abducted in his car by an unknown man and woman to whom he had just given a ride. After they pushed him out of his car, he was required to walk home, a distance variously described as between 40 and 60 miles. TSgt Olsen advised the appellant he would have squadron members pick him up for work the next morning, 4 October. The airmen so assigned stopped by the appellant's house, but no one answered their knocks at the door. A short time later, the appellant called the office and asked about his ride. This time TSgt Olsen drove to appellant's house, found the appellant, brought him back to the base and took him to the office of the First Sergeant, MSgt Yoke. Also present for this meeting was SMSgt Cooke, TSgt Olsen's supervisor.

MSgt Yoke advised appellant of his Article 31(b), 10 U.S.C. § 831(b) rights which appellant waived, agreeing to explain his absences from work. He then described, in more detail, the series of events he had related to TSgt Olsen about picking up two hitchhikers who he agreed to transport to some designated point for $50. Upon arrival at the destination they took the $50 from him, as well as his car, and forced him to walk home.

Following this discussion MSgt Yoke asked appellant something to the effect of "Sgt Barnes, I would like for you to provide us a urine sample. Will you do that?" The appellant responded that he would, and then asked why everyone was persecuting him. MSgt Yoke responded that no one was persecuting him and that they did not suspect him of drug abuse; it was just normal procedure to request a urine sample. There was no other discussion about the urine sample until MSgt Yoke left the room and returned with two sheets of paper for the appellant to sign.

It is at this point that appellant claims that his urinalysis became commander-directed and was no longer consensual. The first piece of paper presented to appellant for his signature is addressed "To Whom It May Concern", and it contains only the simple statement: "I ... do hereby give my consent to give a urine sample." The second piece of paper was a letter with three indorsements. The letter is addressed to the appellant, from his commander, and the subject line is: "Commander Directed Urinalysis (Consent)". This letter directed appellant to the hospital to provide a urine sample. The first indorsement was signed by appellant and it acknowledged receipt of the commander's letter; the second indorsement was signed by the commander and it requested the hospital to perform a urinalysis on appellant; and the third indorsement is from the laboratory technician who reported to the commander that a sample was received on that date.

There was no discussion accompanying the signing of these documents other than that MSgt Yoke said they needed to be signed before the hospital could take the sample. When asked to distinguish between the contradictory language in the subject line of the second letter "Commander Directed Urinalysis (Consent)," MSgt Yoke testified they used the same letter for both types of urinalyses in order to simplify the amount of paperwork.* Following arguments on the issue of the admissibility of the results of the urine testing, the military judge found the appellant voluntarily consented to provide the sample and admitted it. We agree with the Judge's findings.

 For the results of the urinalysis testing to be admissible, the appellant's consent to the search of his urine must have been given voluntarily. Mil.R.Evid. 314(e); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The burden of proving voluntariness by clear and convincing evidence falls on the prosecution. Mil.R.Evid. 314(e)(5).

There is no one test for these purposes so we must weigh a number of factors to arrive at a conclusion. One of the factors to determine voluntariness is whether the accused was advised of his Article 31, UCMJ rights. *United States v. Rushing*, 38 C.M.R. 96 (C.M.A.1967); *United States v. Thompson*, 12 M.J. 993 (A.F.C.M.R.1982). Another factor is whether the accused was under apprehension at the time of the request or if the consent was given in the coercive atmosphere of a security police or other investigatory agency's office. *United States v. Wallace*, 11 M.J. 445 (C.M.A.1981). Another consideration is the age and maturity of the accused. Examining all of these factors in this case, we agree with the military judge that despite an imprecise nomenclature on the second letter signed by appellant, the appellant voluntarily consented to provide a urine sample for drug testing.

Addressing the second assignment of error, the appellant argues that the military judge had a *sua sponte* obligation to give the court members an instruction on the defense of physical inability to comply with his duty to report to work. The factual basis for this instruction is the testimony of government witnesses regarding information provided to them primarily by appellant that he was abducted by two people, his car was stolen and he was required to walk many miles back to his home. Appellant argues that the recovery of his car several days later corroborates his story.

 A military judge is required to instruct on special defenses reasonably raised by the evidence; however the failure to object to an omission constitutes waiver, absent plain error. R.C.M. 920(f). Plain error is error which is not only obvious and substantial, but must be such as to have an unfair impact on the court members' deliberations. *United States v. Fisher*, 21 M.J. 327, 329 (C.M.A.1986).

 In the case before us we find the factual scenario described by appellant, al-

---

* From this we assume a true, commander-directed urinalysis case would involve only the one letter with three indorsements and the parenthetical would be deleted.

though speculative, was sufficient to require a *sua sponte* instruction from the military judge. Even though the military judge did not give an instruction on the appellant's inability to report for duty at the time prescribed, the defense was not hampered in its ability to present this theory of the case to the court members. The defense outlined this theory during their opening statement and discussed it in more detail during the closing argument on findings. Further, nothing in the military judge's instructions prohibited the court members from adopting this theory as a basis for a not guilty finding as to this charge. Based on this, we find the failure to provide the instruction, without objection, did not amount to plain error. Its absence did not result in a grave miscarriage of justice to the appellant, and therefore does not justify reversal. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. McLaurin*, 22 M.J. 310, 313 (C.M.A.1986); *Fisher*, 21 M.J. at 329.

■■■ One further issue which needs to be addressed is the military judge's failure to comply with R.C.M. 910(g)(2). He accepted the appellant's pleas to the AWOL, and then proceeded to find the appellant guilty, by exceptions and substitutions, of that lesser included offense, knowing that the prosecution planned to attempt to prove the greater offense before the court members.

R.C.M. 910(g)(2) provides that findings which are based on a plea of guilty may be entered immediately by a military judge upon acceptance of the plea at an Article 39(a) session unless the plea is to a lesser included offense and the prosecution intends to proceed to a trial on the offense as charged. *See also* Appendix 8, MCM. Here, the military judge should only have accepted appellant's plea to AWOL and later instructed the court members to enter findings in accordance with those pleas, unless they were convinced beyond a reasonable doubt that appellant committed the charged offense. Following the guidance found in *United States v. Moser*, 41 C.M.R. 999 (A.F.C.M.R.1970), we find the military judge's findings were a nullity as to the

desertion charge, and therefore we will look instead to the findings of the court members. *See also United States v. Varnell*, 4 M.J. 111 (C.M.A.1977); *United States v. Bohl*, 3 M.J. 385 (C.M.A.1977); *United States v. Bryant*, 22 U.S.C.M.A. 36, 46 C.M.R. 36 (1972); *United States v. Nedeau*, 7 U.S.C.M.A. 718, 23 C.M.R. 182 (1957).

The appellant was charged, as amended, with desertion from 12 March 1990 to 5 April 1990 and he pleaded guilty to AWOL for this period. The military judge found the appellant guilty of AWOL from 18 March to 5 April; however, the court members found him guilty of AWOL for the charged period, 12 March to 5 April. It is this latter finding we approve and order the court-martial order be amended to so reflect.

The findings, as amended above, and the sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Judges RIVES and MILLS concur.