### UNITED STATES

v.

**Staff Sergeant Angelino M. GURON, Jr., FR575–72–8290, United States Air Force.**

**ACM 29541.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 15 July 1991.

Decided 16 July 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major George F. May.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Jeffrey C. Lindquist, and Major Paul H. Blackwell, Jr.

Before SNYDER, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Sergeant Guron was convicted of making a false official statement and stealing more than $100 from the United States.[1] This is one of several recent cases involving unauthorized receipt of military allowances obtained by false certifications concerning dependency of family members, provision of certain levels of support to family members, expenditure of certain amounts for off-base quarters, or other matters that qualify the member for the allowance. As in most such cases, the primary issue is whether the specific facts in the record of trial constitute the crime of larceny. We find they do so in this case, but we must modify the findings and the sentence because we find a portion of the larceny finding is factually insufficient.

### FACTS

Sergeant Guron's son, Lindsey, was born in England in May 1982. Tragically, his mother died in childbirth. The child was entered as Sergeant Guron's dependent in his Air Force personnel and finance records, and Sergeant Guron began collecting Basic Allowance for Quarters (BAQ) at the "with dependents" rate, which is higher than the "single" rate. *See generally, United States v. Bost,* 34 M.J. 1094 (A.F.C.M.R.1992). In 1984 Sergeant Guron was transferred to McChord Air Force Base, Washington. In the summer of 1986 Lindsey went to live with Sergeant Guron's mother in Hawaii so Sergeant Guron could devote time to completing his college education.[2] The child returned to live with Sergeant Guron each summer while school was in recess, and for other periods of a month or less. For most of the time after mid-1986 Lindsey lived in Hawaii. This arrangement continued until May 1990, when Sergeant Guron's mother moved to

---

1. Articles 107, 121, UCMJ; MCM, Part IV, paragraphs 31, 46 (1984).

2. Sergeant Guron testified he attended the University of Puget Sound on a part-time basis for 2 years, using his BAQ to supplement the benefits he received from a military tuition assistance program. During his last school year, 1988– 1989, he attended full-time under the "Boot–Strap" program, under which he continued to receive his full military pay and allowances but was excused from the performance of duty, and under which he received educational benefits through the Veteran's Administration.

Tacoma, Washington, near McChord, and Sergeant Guron and Lindsey went to live with her.

During the time Lindsey was living with his grandmother in Hawaii, Sergeant Guron sent her $25 a month by allotment from his military pay, and he occasionally sent additional cash, clothing, school supplies, and toys. He also made an allotment from his military pay of $100 per month to purchase United States government savings bonds, which were registered in his name but on which Lindsey was designated as beneficiary. Sergeant Guron testified he intended this money as an educational fund for Lindsey. In March 1989 Sergeant Guron's mother adopted the child in order to qualify for additional Social Security benefits. Sergeant Guron initially was adamantly opposed to terminating his parental rights to permit the adoption, but he ultimately consented.

Throughout this period Sergeant Guron was receiving BAQ at the "with dependents" rate.[3] He recertified his eligibility for this allowance biannually, each time certifying that his son resided with him and that he provided adequate support for him. The last two of these certifications, on 2 May 1988 and 15 May 1990, were charged as false official statements. He was also charged with larceny of the $16,117.46 he received in unauthorized BAQ payments from 1 December 1986 to 31 July 1990.

Sergeant Guron maintained that he never intended any deception. He testified he believed he was providing adequate support for his son, and that he believed it was appropriate to list his own address as his son's residence. He also testified he never stopped thinking of Lindsey as his son, even after the adoption, and he forgot about the adoption when he completed the 15 May 1990 dependency certification. He further testified he believed at all times he was entitled to the BAQ allowances he received. The members found Sergeant Guron guilty of making one false official statement (on the 15 May 1990 recertifica-

tion, which he made after the adoption) and they found him guilty of stealing "some amount greater than $100."

## VOLUNTARINESS OF STATEMENTS

Sergeant Guron first assigns as error that the military judge denied defense motions to suppress several statements Sergeant Guron made to agents of the Air Force Office of Special Investigations (OSI) and to a military pay technician in the base accounting and finance office. We address these issues in the order the statements were made.

On 12 June 1990 two OSI agents called Sergeant Guron to their office for an interview. There is no question that he was suspected of BAQ fraud before the interview began. Sergeant Guron argues the incriminating oral and written statements he made during this interview were involuntary because he was not given a warning of rights until after a 9–minute "preface conversation." We disagree.

There is little controversy as to the facts. For approximately 9 minutes after Sergeant Guron entered the interview room with the two agents, the agents engaged him in conversation about a variety of subjects having nothing to do with the investigation. They talked about Sergeant Guron's duty specialty and personal background, his educational pursuits and other off-duty interests, and about the weather. One of the agents asked if Sergeant Guron had just finished his shift, and whether he was tired. Both agents testified it is standard OSI procedure to conduct such "preface conversations," the purpose being to get acquainted with the subject and to relax him before confronting him with the allegation and advising him of his rights. Sergeant Guron complains that if the agents had not gotten his confidence in this manner, and if instead they had told him at the outset he was suspected of a crime and had given him a warning of his rights, he would have requested counsel and declined

---

**3.** It also appears from the record that if Sergeant Guron had no dependents he would not have qualified automatically for BAQ at the "single" rate. He would have needed his commander's approval to live off base and draw BAQ.

to talk. He cites *United States v. Byers*, 26 M.J. 132 (C.M.A.1988), where the Court of Military Appeals stated that warnings of rights must be given before interrogation begins, and not midway through it.

In *Byers*, however, before giving a rights advisement the interviewer made a speech to the suspect about the state of the evidence against him that the Court found was tantamount to interrogation. The facts are completely different in this case. There was some variance between Sergeant Guron's testimony and that of the two agents as to whether there was any discussion of where Sergeant Guron's son resided before the warning of rights was given, but the military judge made specific findings that there was no such pre-warning discussion of facts relevant to the suspected offense. Therefore, there are no unwarned admissions to consider. We find the military judge's findings on this issue are well supported by the evidence and we adopt them as our own.

■ We decline to create a rule that the first words out of the mouth of an interviewer must be a rights advisement. The rule is that such a warning must be given before interrogation begins. The concept of what constitutes "interrogation" is a broad one, encompassing any interview technique that is reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (not a brief conversation in suspect's presence between two police officers about a missing firearm); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), *reh'g denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977) ("Christian burial" speech); *United States v. Steward*, 31 M.J. 259 (C.M.A.1990) (threat to ground pilot unless he cooperated); *Byers*, 26 M.J. at 134; *United States v. Muldoon*, 10 M.J. 254 (C.M.A.1981) (informing a suspect that he was implicated by someone else); *United States v. Kramer*, 30 M.J. 805 (A.F.C.M.R.1990) (statement by investigator, "We are not going to see your face on the [ATM] tape, are we?"); Mil.R.Evid. 305. The military judge found no functional equivalent of interrogation in

the "preface conversation" in this case, and neither do we. Sergeant Guron was not interrogated until after an appropriate advisement of rights. The military judge also found the "preface conversation" did not constitute illegal influence, inducement, or coercion. We agree. We concur in the military judge's finding that Sergeant Guron's statements to the OSI on 12 June 1990 were made voluntarily.

■ There followed several blunders by the OSI case agent, who was relatively new to OSI and still on probationary status. On 13 July 1990 he called Sergeant Guron on the telephone posing as a census worker and asked him several questions about Lindsey's birth. When his supervisor later told him this was inappropriate, the agent called Sergeant Guron again, identified himself as an OSI agent, and asked the same questions again. He gave no warning of rights, however, and he did not notify the defense counsel whom Sergeant Guron had consulted. Both times, Sergeant Guron provided the information requested. We need not pause, however, to sort out all the legal niceties relating to these incidents because the record demonstrates conclusively that the information disclosed by Sergeant Guron in these telephone conversations would inevitably have been discovered. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Spaulding*, 29 M.J. 156 (C.M.A. 1989); Mil.R.Evid. 304(b)(2), (3). In fact, the information in question was contained in a message that was already in the agent's case file, but which he had not yet read. The exclusionary rule does not apply in these circumstances.

■ Sergeant Guron next argues that statements he made to a civilian military pay technician in the accounting and finance office in response to her questions to him without a rights advisement were involuntary. We disagree.

The inquiry into Sergeant Guron's BAQ entitlement resulted from a base-wide survey of BAQ entitlements at McChord. One of the procedures used in this survey was to compare information concerning family

members in members' personnel records with similar data in their finance records. In Sergeant Guron's case, he had listed his son's residence as Hawaii on several documents in his personnel records, while listing it as Tacoma on his BAQ recertifications. Resolution of such discrepancies was pursued primarily by military pay officials. Indications of criminal fraud were investigated by the OSI.

A military pay technician, Ms. Schneider, called Sergeant Guron into the finance office on 14 June 1990 to discuss his BAQ entitlements. He gave her essentially the same information he had already given the OSI. She spoke to him again the next day, when he came in to decrease the amount of a dependent support allotment he had started after their first interview. In mid-August, after an OSI agent told Ms. Schneider he had learned Sergeant Guron's son had been adopted by Sergeant Guron's mother, she called him in again to notify him that the adoption disqualified the child as his dependent as a matter of law, and it terminated his BAQ entitlement. She testified at trial Sergeant Guron said he recertified his son as his dependent for BAQ on 15 May 1990 because he forgot the adoption had occurred.

Sergeant Guron argues the statements he made to Ms. Schneider should have been suppressed by the military judge upon timely motion by the defense because no Article 31, 10 U.S.C. § 831, warnings were given. We disagree.

Members of the accounting and finance office are not criminal investigators, and they do not exercise disciplinary authority over military members not assigned to their office. They have an independent responsibility to ascertain the facts necessary to make proper payments of pay and allowances to military members, and to collect amounts owed by members to the government. *See United States v. Moore,* 32 M.J. 56 (C.M.A.1991) (psychiatric nurse's questions were for medical purposes, not criminal investigation); *United States v. Loukas,* 29 M.J. 385 (C.M.A.1990) (aircraft crew chief's questions to crew member about being under influence of drug were for operational purposes, not for disciplinary purpose); *United States v. Collier,* 36 M.J. 501 (A.F.C.M.R.1992) (physician's questions were for medical reasons, not criminal investigation); Mil.R.Evid. 305. We hold that when accounting and finance personnel interview military members to determine their eligibility for pay and allowances, and not for purposes of disciplinary action or criminal prosecution, no Article 31 warnings need be given and the statements made by military members in such settings are not generally inadmissible as involuntary under Mil.R.Evid. 304.

■ Sergeant Guron argues further that in the circumstances of this case Ms. Schneider was acting as an agent for the OSI, and therefore she was required to give him a rights advisement. He points to the fact that personnel of both the accounting and finance office and the OSI participated in the BAQ survey at McChord, and they shared information with each other. On the other hand, the OSI case agent testified that the OSI did not ask Ms. Schneider to get any information for them from Sergeant Guron, and she testified that she passed no information to OSI obtained from Sergeant Guron. The military judge made the following finding:

> Ms. Schneider was acting in her independent role as a military pay clerk and not as an agent of the AFOSI. While she furnished some information to AFOSI, that came from the finance records and computers. She was not asked to ask questions of the accused for AFOSI, nor did she provide them his oral responses to her. The matter she was investigating was a matter within her own official duties, and she was not acting as part of a law enforcement or disciplinary investigation. As such, she was not required to advise the accused of Article 31. *U.S. v. Loukas,* 29 M.J. 385 (C.M.A.1990); *U.S. v. Moore,* 32 M.J. 56 (C.M.A.1991). Her questions were limited to fulfill her official responsibilities and were not designed to evade the accused's constitutional or codal rights.

We conclude this finding of the military judge is well supported by the evidence,

and we adopt it as our own.[4] Ms. Schneider was not acting as an agent of a law enforcement agency or disciplinary official, so no Article 31 warning was required. *United States v. Moreno*, 36 M.J. 107 (C.M.A.1992) (state social worker had not become a de facto agent of military law enforcement authorities, so no Article 31 warnings were required); *United States v. Lonetree*, 35 M.J. 396 (C.M.A.1992) (civilian United States intelligence agents conducting independent investigation into damage caused by service member's involvement with Soviet agents did not become instruments of any military law enforcement agency and were not required to give Article 31 warnings).[5]

## MISTAKE OF FACT

■ Sergeant Guron next argues the military judge erred to his prejudice by giving an incomplete instruction on mistake of fact. We agree the instruction was incomplete, but we find no prejudice to Sergeant Guron, and we further find any error was waived.

The military judge held several sessions of the court-martial without the members present[6] at which he discussed with the accused and counsel for both sides his proposed instructions on findings. Defense counsel requested an instruction as to mistake of fact with respect to both charges. The military judge agreed. He further stated that, since making false official statements and larceny are specific intent offenses, the mistake need only have been honest, not both honest and reasonable. The military judge then prepared written instructions and held another session with the accused and counsel to review his proposed written instructions. The defense counsel stated he had no corrections or objections to the written instructions, which were ultimately read to the members and given to them for their reference during deliberations.

Sergeant Guron argues before us the instruction given by the military judge on mistake of fact relating to the false official statement charge was defective in that it did not list all the false statements of fact Sergeant Guron was charged with making. The instruction given was as follows:

The evidence has raised the issue of mistake on the part of the accused concerning the intent to deceive in relation to both offenses alleged in Charge I.

I advised you earlier that to find the accused guilty of this offense, you must find beyond a reasonable doubt that the accused had the specific intent to deceive. If the accused, at the time of the offense, was under the mistaken belief that he was adequately supporting Lindsey and that Lindsey's residence for the stated periods of time was 2108 South Union, number 14, Tacoma, Washington, then he cannot be found guilty of the offenses of signing a false official record.

The mistake, no matter how unreasonable it might have been, is a defense. In deciding whether the accused was under such mistaken beliefs, you should consider the probability or improbability of the evidence presented on the matter.

You should consider the accused's age, education, and experience, along with all the other evidence on this issue, including, but not limited to the testimony of his supervisors and coworkers.

The burden is on the prosecution to establish the guilt of the accused. Therefore, you may not find the accused guilty

---

4. The military judge in this case made written essential findings complete with specific findings of fact, references to the principal authorities he relied upon, and lucid conclusions of law. We are well aware that it is onerous for the parties to devote the necessary time and effort to prepare thorough essential findings in the heat of trial, but they are indispensable to our task on appellate review. We applaud the exceptionally useful essential findings prepared by the military judge in this case.

5. Since we have found each of these statements of Sergeant Guron admissible, we need not examine Sergeant Guron's argument that certain other evidence should be excluded as derivative of them.

6. Article 39(a), UCMJ.

of the offenses of signing false official records unless you are convinced beyond a reasonable doubt that at the time of the alleged offenses, the accused was not under the mistaken beliefs.

Sergeant Guron has no quarrel with this instruction except that it listed the two items he was charged with stating falsely in both specifications (adequate support and the child's residence), but it did not mention the third item he was charged with stating falsely only in specification 2: that Lindsey was his dependent. This became important, he argues, because the members' findings of not guilty as to specification 1, but guilty to specification 2, indicated they may not have been convinced beyond a reasonable doubt that Sergeant Guron intended to deceive about his provision of adequate support or about Lindsey's place of residence, but that they found he did intend to deceive about whether Lindsey was still his dependent after his parental rights and responsibilities had been terminated by adoption.[7]

This is not a case where the military judge failed entirely to instruct the members on a defense reasonably raised by the evidence. *See, e.g., United States v. Van Syoc,* 36 M.J. 461 (C.M.A.1993); R.C.M. 920(e). Here the military judge gave a mistake of fact instruction that was appropriate in every way except that it failed to mention one of several charged false statements. This situation serves as a perfect example of the ever-present danger that, when one sets out to tailor an instruction to the facts of a case, reference to some material fact may be omitted.

None of the trial participants seem to have noticed the omission. The military judge gave counsel two opportunities to raise corrections or objections to his instructions on findings, once after counsel had examined his proposed written instructions and again after he had read them to the members. Neither counsel raised any correction or objection to this instruction. Mistake of fact was the only seriously contested issue before the members, and both counsel concentrated their arguments on findings on that issue; both addressed the question of whether Sergeant Guron was honestly mistaken when he certified in May 1990 that Lindsey was his dependent.

The effect of the omission should also be considered in the light of a companion instruction on mistake of fact relating to the larceny charge. That instruction was as follows:

Now, the evidence has raised the issue of mistake on the part of the accused concerning specific intent in relation to the offense of larceny alleged in Charge II. I advised you earlier that to find the accused guilty of this offense, you must find beyond a reasonable doubt that the accused had the specific intent to defraud or to deprive. If the accused, at the time of the offense, was under a mistaken belief that he was qualified for the moneys or continued to be so qualified, then he cannot be found guilty of the offense of larceny.

This instruction directed the members to look at all the elements in contest concerning whether the accused was qualified to receive BAQ allowances, including whether Lindsey was Sergeant Guron's dependent in May 1990. This instruction was consistent with what appears from the record to have been the clear understanding of all the trial participants that mistake of fact applied to all the alleged false statements relating to the accused's qualifications to receive BAQ.

We also note the military judge's instructions defining the elements of the offense

---

**7.** This inference is by no means the only one that can be drawn from the members' findings on these two specifications. Two years passed between the two BAQ certifications, during which more things changed than just the adoption. The most important of these was Sergeant Guron's graduation from college about a year before the May 1990 certification that was the subject of specification 2, thereby ending the primary reason he gave for having Lindsey reside "temporarily" in Hawaii. It should also be noted that the members found Sergeant Guron guilty of specification 2 without excepting any part of the allegation that it was false in all three particulars: that Sergeant Guron was providing adequate support for Lindsey, that the child resided with Sergeant Guron, and that Lindsey was his dependent.

of making a false official statement addressed the mental state of the accused as follows:

Now, the elements of the offense alleged in specification 2 of Charge I are as follows:

That on or about 15 May 1990, at McChord Air Force Base, Washington, the accused, Staff Sergeant Angelino M. Guron, Junior, signed a certain official record, that is, Air Force Form 987.

Second, that such record was false in that it stated that the accused had provided adequate support for his dependents since arriving on station and in that it stated Lindsey A.S. Guron resided at 2108 South Union, number 14, Tacoma, Washington, and in that it stated that Lindsey A.S. Guron was the dependent of the accused.

Third, that the accused knew it to be false at the time he signed it.

And fourth, that the false record was signed with the intent to deceive.

Now, the term "intent to deceive" means to purposely mislead, to cheat, to trick another, or to cause another to believe as true that which is false.

Considering all these instructions together, along with the arguments of counsel, we are satisfied the members understood they could not convict Sergeant Guron on specification 2 of Charge I unless they were convinced beyond a reasonable doubt that he did not honestly believe Lindsey was his dependent when he signed the BAQ form in May 1990.

We conclude the military judge's instruction applying mistake of fact to specification 2 of Charge I was incomplete and thereby erroneous, but we further find that in this context the error created no substantial risk of prejudice to Sergeant Guron. We also note that R.C.M. 920(f) provides that failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error. We have no hesitancy in applying waiver here, where we are convinced there was no resulting miscarriage of justice. *United States v. Smith,* 34 M.J. 200, 205 (C.M.A.1992); *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986); *United States v. Barnes,* 33 M.J. 893 (A.F.C.M.R.1991); *United States v. Alford,* 31 M.J. 814 (A.F.C.M.R.1990).

## LARCENY

 The prosecution relied on two separate theories of larceny: (1) wrongful obtaining by false pretenses, and (2) wrongful withholding. Over defense objection, the military judge instructed the members they could find Sergeant Guron guilty using either theory. In order to preserve an adequate record for review, the military judge instructed the members that if they found the accused guilty of larceny they should indicate on the findings worksheet what theory or theories they relied upon.[8] The members did so, indicating they found the accused guilty of larceny on both theories. Sergeant Guron now argues before us the military judge erred when he instructed the members they could find him guilty of larceny on a theory of wrongful withholding. We find no error in the instructions of the military judge, but we find the evidence factually insufficient to support a finding of guilt of larceny by wrongful withholding.

---

**8.** The members are not routinely asked to announce the reasoning that underlies their findings, and we do not favor doing so generally. In cases like this one, however, when the validity of the findings may depend on the theory of guilt adopted by the members, or on some analogous issue, such special findings by the members are highly useful. There is no specific authorization in the Manual for Courts–Martial for special findings by the members, but we conclude the military judge has the authority to require the members to make such findings under the general authority granted the military judge in R.C.M. 801(a) to exercise control over the proceedings. We are aware that the Discussion accompanying R.C.M. 918(b) states, "Members may not make special findings." The Discussion and Analysis accompanying the Manual for Courts–Martial are not statements of official policy. MCM, Part I, paragraph 4 (1984). We find no error in the decision of the military judge in the circumstances of this case to require the members to announce which theory or theories of larceny they relied upon.

While appellate review of this case was pending, this Court decided *United States v. Antonelli,* 37 M.J. 932 (A.F.C.M.R.1993) (further review), in which we held the evidence was not legally sufficient to support a conviction for larceny by wrongfully withholding excess BAQ allowances. We found in *Antonelli* that, under the existing directives governing BAQ, an Air Force member has no duty to account for excess BAQ previously received that would factually support a conviction of larceny by wrongful withholding.[9] Since the facts in this case are indistinguishable in any significant way from those in *Antonelli,* we reach the same result.

Sergeant Guron was properly convicted on the theory of larceny by wrongful obtaining by false pretenses, but the only false statement of which the members found him guilty was his false BAQ certification on 15 May 1990. We find it necessary, therefore, to modify the finding of guilty on the larceny specification to cover only the period from 15 May 1990 to 31 July 1990. Since the members found Sergeant Guron guilty only of stealing "some amount in excess of $100," the finding of the value of the funds stolen need not be modified. We will reconsider the sentence in the light of this modified finding.

## MULTIPLICITY

■ The defense at trial moved to dismiss the false official statements charge on the basis that it was multiplicious for findings with the larceny charge. The military judge denied the motion to dismiss, but he instructed the members that the offenses were multiplicious for sentencing. Sergeant Guron argues the military judge erred by not dismissing the false official statements charge. We agree the two offenses were multiplicious for findings, since the false official statement was the false pretense by which the larceny was committed. *United States v. Fullwood,* 21 M.J. 167 (C.M.A.1985) (summary disposition) (larceny multiplicious with making a false claim); *United States v. Allen,* 16 M.J. 395 (C.M.A.1983) (larceny multiplicious with bad checks); *United States v. Donegan,* 27 M.J. 576 (A.F.C.M.R.1988), *pet. denied,* 28 M.J. 81 (C.M.A.1989) (larceny multiplicious with making a false claim); *United States v. Parks,* 32 M.J. 705 (A.C.M.R. 1991) (larceny multiplicious with making a false claim). Accordingly, the findings of guilty as to Charge I and its specification are set aside and dismissed.

However, we are satisfied this multiplicity did not prejudice Sergeant Guron as to sentence, since the members were instructed to treat the charges as one offense for sentencing. *Fullwood,* 21 M.J. at 168; *Allen,* 16 M.J. at 396; *Donegan,* 27 M.J. at 578.

## SENTENCE

■ We presume the members sentenced Sergeant Guron consistently with their findings that he committed larceny both by wrongful obtaining by false pretenses and by wrongful withholding. Over defense objection the military judge instructed the members that, consistent with their findings, they could "consider such moneys as the court found the accused withheld or obtained between 2 May 1988 and 31 July 1990." The trial counsel argued the members should punish the accused for stealing from the government "for years." The sentence imposed by the members included a fine of $8,000, which appears to be an approximation of the amount of unauthorized BAQ Sergeant Gu-

**9.** The military judge observed during his colloquy with counsel on findings instructions that Sergeant Guron could have been charged with dereliction of duty for failure to inform the Air Force of changes in the circumstances that formed the basis for his BAQ entitlement. We need not decide this issue, but it appears to us the military judge was probably correct. The applicable directives and the language on the face of the Air Force Form 987, Recertification of Basic Allowance for Quarters (BAQ)–Varia-ble/Rent Plus Housing Allowance (VHA/RPHA) (Nov 84) establish a duty on the part of the member to notify authorities about changes in the status of dependents "such as divorce, child support, marriage, death, living in government quarters, enlistment in the military service, etc." The duty to inform authorities about changes in circumstances is a different matter, however, from a duty to account for funds previously received that would support a conviction of larceny by wrongful withholding.

ron received between 2 May 1988 and 31 July 1990. We conclude there is a direct relationship between the sentence imposed and the erroneous guilty finding of larceny by wrongful withholding.

■■■ We may reassess a sentence if we are able to determine what sentence the trial court probably would have imposed if there had been no error. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990); *United States v. Crowe*, 30 M.J. 1144 (A.F.C.M.R. 1990), *pet. denied*, 32 M.J. 43 (C.M.A.1990). We believe we are able to do so in this case. The members sentenced Sergeant Guron to a bad-conduct discharge, 4 months confinement, total forfeitures, reduction to E–1, and an $8,000.00 fine. If they had sentenced him only for the modified findings we have approved, we are confident they would have taken the same action on the bad-conduct discharge, forfeitures, and reduction in grade. They would probably have sentenced Sergeant Guron to somewhat less confinement. The amount of any fine would probably have been about $1,000.[10] Since Sergeant Guron has long since served his adjudged confinement, we have no effective power to remit any portion of his sentence to confinement. The most appropriate action we can take as redress for any unwarranted confinement he may have served is to remit his fine.

We therefore approve only so much of the sentence as provides for a bad-conduct discharge, confinement for 4 months, forfeiture of all pay and allowances, and reduction to E–1. We have given individualized consideration to the appropriateness of the sentence, weighing the nature and seriousness of the offense, the character and military performance of Sergeant Guron, and all the circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We find the sentence, as reassessed, is not inappropriate.

Charge I and its specification are set aside and dismissed. The remaining findings of guilty, as modified, and the sentence, as reassessed, are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge SNYDER and Judge JAMES concur.

---

**10.** Sergeant Guron's BAQ was $361.50 per month during May, June, and July of 1990.